JUNE TERM, 1871. 171

Young vs. The Chicago and Northwestern Railway Company.

YOUNG VS. THE CHICAGO AND NORTHWESTERN RAILWAY
COMPANY.

RAILROADS.— (1) *Obstruction of water-course by road-bed.* (2) *Estoppel in Pais: What acquiescence will constitute.* (3) *Relief to which a party injured by obstruction of a water-course is entitled.*

1. It was the duty of the Rock River Valley Union R. R. Co., under its charter (and would have been its duty independently of the special provisions of the charter), to so construct its road-bed across a stream of water in the line thereof, as not to divert the water from its natural channel without the consent of the land owner, to the injury of his adjoining lands.

2. The fact that plaintiff, after the diversion of such a stream on his land by said company, did not *bring suit* for eighteen years, *held* not to be such an acquiescence as deprived him of his right of action; it appearing that at the time the water was diverted he insisted that a culvert should be built so as to retain it in its natural channel, and has from time to time expressed to agents of the company his objections to the diversion.

3. Plaintiff is entitled to a judgment against defendant (as successor to said Rock River Valley Union R. R. Co.), requiring it to construct a culvert under its road so as to restore the stream to its natural channel, perpetually restraining it from diverting the stream therefrom, and giving damages for the diversion.

APPEAL from the Circuit Court for *Dodge* County.

The complaint avers, in substance, that the Rock River Valley Union Railroad Company, from whom the defendant derived title, in the construction of its railroad, in 1853, across the plaintiff's land, obstructed and diverted the course of a brook flowing thereon; that when the railroad was building, the first design of the company was to construct a culvert so that the stream could keep its natural course, and stone was drawn there for that purpose, and was still lying unused; but that design was abandoned, and no passage way provided across the embankment, and the stream was conducted or allowed to run for some distance by the side of the railroad without crossing it, and quite in another direction from its former channel; that the

successors of this company, including the defendant, had maintained this obstruction until the commencement of this action; that this obstruction and diversion of said stream was done without plaintiff's consent and against his wishes; that in consequence of such diversion, that part of plaintiff's land through which the stream had previously flowed, and which had then been valuable and productive meadow land, had become dry and sterile, and had lost its value as grass growing land; that the part upon which the water of this stream was now forced to find its way had become wet, spongy and porous, so as to be unfit for plow-land, or any purpose of agriculture, and was much deteriorated in value; and that plaintiff was also greatly damaged by being obliged to find more distant and inconvenient watering places for his stock. Prayer, that the defendant may be ordered, as provided in its charter, to construct at its own expense, and thereafter maintain, a suitable passage way for the passage of the stream in its own natural channel; and for an injunction perpetually restraining defendant and its successors from diverting the waters of the stream; and for damages for the injuries already sustained. The complaint is verified.

The answer denies that the Rock River Union Valley Railroad Company diverted the stream from its natural channel *against the consent of the plaintiff*; and alleges that when that company built its road, the plaintiff agreed and consented to the diversion of the water; that in pursuance of this agreement, the company took possession of the stream, and diverted the same to its own use; and that since then said company and its successors have used the same for supplying their locomotives with water, with the knowledge and consent of the plaintiff. The answer further denies that the embankment sets the water back upon the lands of the plaintiff.

At the trial, the only evidence introduced was that of the plaintiff as a witness on his own behalf. His testimony detailed the character of the obstruction, and the injuries sustained by

the diversion of the stream, supporting generally the allegations of the complaint in those respects.   He also testified, in sub-stance, that the injury to his land did not become apparent un-til some time after the embankment had been built; that at the time the ditch along the side of the railroad was first dug so as to convey the water up to the railroad water-tank, he com-plained to the men at work there, and also to one McQueen, who was in charge of the work, and who had been ordered to put in the culvert, for which stone were drawn, and witness demanded that the culvert should then be put in, but McQueen sent him to some one else; he had also complained to station agents, who sent him to the section men, and the latter told him they knew nothing about it, that he would have to go to somebody else—as to the road-master; and upon going to him, he said he did not feel disposed to do anything about it, but referred witness to Hobart or Dunlap, or some higher officer of the road; he saw Hobart, assistant superintendent of the road, at one time, and he agreed with witness, a year ago the winter before, that if witness would wait until the snow was off, he would come and examine the premises, and would settle the matter amicably; in the spring he said he had made up his mind not to do anything about it.   Witness had also written to Dunlap, superintendent of the road, before he had seen Hobart.   He made complaint to these parties as soon as he found they were the proper officers to complain to.

The circuit court found the facts as stated in the opinion, and dismissed the complaint; from which judgment the plaintiff appealed.

*E. P. Smith* and *H. W. Sawyer*, for appellants:

1. The plaintiff has properly come into a court of equity for permanent relief.   The acts of the defendant and its predecess-ors in contravention of its charter (Laws of 1848, sec. 9, p. 164) constitute an undoubted and continuing nuisance.   *Brown v. R. R. Co.*, 2 Kern, 486; *Vedder v. Vedder*, 1 Denio, 257; *Mahon*

*v. R. R. Co.*, 24 N. Y., 658–660; *Pfeifer v. R. R. Co.*, 18 Wis., 155; *Burrows v. Bashford*, 22 Wis., 103; 2 Story's Eq. Jur., § 901, 26–27; *Williams v. R. R.*, 16 N. Y., 111; *Cott v. Lewiston R. R.*, 36 N. Y., 214–217; *Corning v. Troy Iron and Nail Factory*, 40 N. Y., 191. The defendant does not show a good case of equitable estoppel. Such a claim must be *bona fide*, and the use continual, necessary, uninterrupted, and not malicious or uncertain; and no acquiescence short of twenty years can establish title by license or equitable estoppel. If the answer amounts to a plea of actual license, as contra-distinguished from license implied, or equitable estoppel, it is wholly unsustained by the evidence. *Tyler v. Wilkinson*, 4 Mason, 400; 3 Kents' Comm., 359; *Adams v. Barney*, 25 Vt., 225; *First Parish in Medford v. Pratt*, 4 Pick., 222–228; *Woodward v. McReynolds*, 1 Chand., 244; *Hazleton v. Putnam*, 3 id., 117; *Haight v. Price*, 21 N. Y., 241; R. S., 820, §§ 8 and 10. The cases in our state cited by defendant, in which relief was denied, are in no respect parallel with this case. The majority were cases involving the erection of mills and mill dams, and where actions were brought to restrain the erection of dams, or to regulate the flow and use of the water, and *that* after long acquiescence on the part of the plaintiff, and great expenditure on the part of the defendant and others. Counsel distinguished the cases of *Sheldon v. Rockwell*, 9 Wis., 166; *Blanchard v. Doering*, 23 Wis., 203; *Cobb v. Smith*, 16 Wis., 661; *Crosby v. Smith*, 19 Wis., 449; *Pettibone v. Railroad Co.*, 14 Wis., 443; *Andrews v. Farmers' Loan Co.*, 22 Wis., 296.

*Enos & Hall*, for respondent.    [No printed brief on file.]

COLE, J.    It probably would not be claimed by any one, that the railroad company which originally constructed the embankment, had the right so to construct it as to divert the stream from its natural channel, without the consent of the plaintiff. The principles of law bearing upon this question are too well settled to admit of doubt, even were there nothing in the char-

ter which imposed the duty on the company to restore the water-course to its natural state. But the charter itself expressly declared that when it should become necessary for the company to construct its road across any stream or water-course, it should restore the stream or water-course to its former state, so as not to impair its usefulness to the owner or the public.   Section 9, page 169, Laws of 1848.

In this case the stream was diverted by the company from its natural channel, and was made to run off at a different place through a ditch cut for the purpose, to the actual injury of the plaintiff.   This is very plain from the evidence offered on the trial.   There would not seem to be any necessity for this change of the stream and diversion of the water.   For aught that appears, a culvert might easily have been put in for the discharge of the water through the embankment in its accustomed channel.

And this is what the company should have done in the first instance, unless the plaintiff had consented to the diversion; and there is no evidence that he did.   And now we are unable to see any valid reason why the plaintiff should not have this done, and have the relief demanded in the complaint, namely, that the present defendant be ordered at its own expense to construct and maintain a suitable culvert for the discharge of the waters of the stream mentioned in the case, through the embankment of its road-bed at the proper place, and that it restore the water to its original natural channel.   It is alleged in the answer that the plaintiff agreed and consented that the Rock River Valley Union Railroad Company might divert the water from its natural bed and channel; and that in pursuance of this agreement that company took possession of the stream, and diverted the same to its use.   But there is not a particle of testimony to sustain such a defense. The court, however, found, as matters of fact, that the plaintiff, at the time of the construction of this embankment and road-bed, lived near, and saw the work done, and did not forbid or object to the filling up the

channel of the stream and diversion of the water, until a short time before the commencement of the action in 1866; and therefore he had "silently acquiesced" in the acts of the defendant and its predecessors in diverting the stream and making a new channel therefor. The doctrine of acquiescence is considered undoubtedly in certain cases, and effect is given to it when a party has long slept upon his rights. But in the present case we see no ground for holding that the plaintiff has lost his rights by silence and acquiescence in the acts complained of. He stated in his testimony that when the road was built, stone was drawn and delivered near the channel, and that the man in charge of the work was notified to put in the culvert; and that as soon as he ascertained that the stream had been diverted, he demanded that a culvert should be put in at that place. He further said, in substance, that at various times and occasions before he found out who were the proper officers to order the culvert put in, he requested the station agents to attend to it. Indeed, the evidence, so far from showing any acquiescence on his part in the diversion of the stream, establishes the contrary fact — that he has constantly clamored against it. True, he did not at once resort to legal proceedings to have the stream restored, but submitted to the inconvenience caused by the diversion of the water until the agents of the company should discharge the duty the law imposed upon them. A man of more litigious disposition might have sooner taken steps to compel the company to put in a culvert; but he certainly did enough to show that he never intended to acquiesce, and had not in fact acquiesced, in the unlawful diversion of the stream from its natural channel. This is the only ground assigned by the circuit court for dismissing the complaint. We think the judgment of the circuit court must be reversed, and the cause remanded with directions to grant the relief asked in the complaint. It will doubtless be necessary to assess the damages of the plaintiff —whatever they may be shown to be — occasioned by the diversion of the water. This can be done on a proper issue directed by the court.

*By the Court.*— The judgment is reversed, and the cause is remanded for further proceedings.