Lyon and wife vs. The Green Bay & Minnesota Railway Company.

RAILROADS: CONDEMNATION OF LAND: APPRAISAL OF DAMAGES. *(1) Remedies against company constructing road over land without authority. (2) Time to which appraisal of damages must refer. (3, 4) Application of this rule to appraisement made after unauthorized occupation of the land. (5) Appraisement must assume the road to be properly constructed. (6) When culverts necessary to proper construction. (7) Presumptions to sustain appraisal.*

1. Though it would seem that a railroad company must of necessity be permitted to go upon lands for the purpose of locating the line of its road, yet if it proceeds to *construct* its road on the lands of another without having acquired the legal right to do so, as by license or condemnation, it is liable in damages as a trespasser, and may be enjoined or ejected.
2. The settled rule in this state, that the value of lands taken for railroad purposes is to be fixed as it is at the date of the appraisement by the commissioners, and not as at the date of the location of the line of the road thereon, extends to the appraisement of damages resulting from such taking to the contiguous lands of the same owner.

3. Where the company has in fact built its road over land of another without authority, and proceedings are *afterwards* taken to condemn the land, the measure of appraisement is the value which the land taken would now have if the road had not been constructed upon it, together with the difference between the present value of the owner's contiguous land, with the road, properly constructed, where it is, and what would have been its present value if the road had not been built.

4. In determining the damages under the above rule, the condition and value of the land as it was just before the road was constructed, may be considered, as evidence.

5. Whether the appraisal of damages to contiguous lands be made before or after the construction of the road, it should have reference to the effect of the road *if properly constructed;* leaving damages from improper construction to be recovered in a common-law action.

6. Where a railroad has been constructed across a watercourse, the want of a culvert for the passage of the water in its natural channel is an imperfection (*Young v. Railway Co.*, 28 Wis., 171); but mere proof that it is built across a cranberry marsh, without a culvert, and that in consequence of its construction the marsh on one side has become dry, has no tendency to show that the road is improperly constructed.

7. By recitals in the award of commissioners of appraisal of land taken for a railroad, it appears that they were appointed under the charter of the railroad company (granted in 1866), and that, before making the award, they took the oath "required by law;" but it does not appear *when* they were appointed, or what was the form of their oaths. The award was made after ch. 119 of 1872 took effect. *Held,* that it must be *presumed,* in favor of the legality of their action, that the commissioners were appointed before the passage of the latter act, and that they took the oath required by it. *Moore v. Railroad Co.*, 34 Wis., 173, and *Bohlman v. Railway Co.*, 40 id., 157, distinguished.

APPEAL from the Circuit Court for *Wood* County.

The plaintiffs are husband and wife. In 1872, the defendant company constructed its railroad over lands belonging to the plaintiff *Esther J. Lyon*, without procuring a condemnation of the same to its use. On July 1, 1875, certain commissioners, who had been theretofore duly appointed for that purpose, made an award of the damages caused by the taking of such land by the railroad company. The sum awarded was $100.

The plaintiffs appealed from such award to the circuit

court. It appeared from the evidence introduced on the trial there, that the railroad was constructed through the center of a cranberry marsh on *Mrs. Lyon's* land, which contained about seven acres; that about two acres thereof are included in the right of way actually taken, leaving about two and one-half acres on either side; and that the construction of the railroad has cut off the water from the portion south of the road, and rendered that portion worthless for the growing of cranberries. The damages claimed were chiefly for taking or destroying this cranberry land.

The court refused to give the jury the following instructions, proposed on behalf of the defendant:

" 1. The plaintiff can recover in this action only for such damage as directly results from a properly and well constructed road-bed and grade across the land described in the award.

" 2. If you find that there is no culvert, and that none was made by the defendant through the railroad embankment in the cranberry marsh on plaintiff's land, and that, solely thereby, and only for the want of such culvert, the portion of plaintiff's cranberry marsh south of the 100 feet strip or right of way of the defendant was rendered valueless, you cannot take that damage into account in assessing damages in this case.

" 3. You will disregard, in your assessment of the damages, the $445.40 item testified to by the witness *R. C. Lyon*, for destruction of the cranberry marsh south of the right of way.

" 4. You must confine your estimate of value to the value of the land on the 1st day of July, 1875; in your assessment of damages, you must consider what the fair market value of the 100 feet strip or right of way of the defendant was on the 1st day of July, 1875, when the award was made, not what that value was in May, 1872.

" 5. If you find that the cranberry marsh was worthless on the 1st day of July, 1875, then you cannot include in your

verdict any sum whatever for said marsh, even though you find that it was previously made worthless by the construction of defendant's railroad across it."

The case is further stated in the opinion.

The jury assessed the damages at $350; and from a judgment in accordance with the verdict, the defendant appealed.

For the appellant, a brief was filed by *Norris & Chynoweth*, and the cause was argued orally by *T. B. Chynoweth*. They suggested that the award in this case could not be the foundation of any valid proceeding. *Moore v. Railroad Co.*, 34 Wis., 173; *Bohlman v. Railway Co.*, 40 id., 157. They also contended, 1. That no damages could be recovered in this action except such as would result from a *properly constructed* road. *Dearborn v. B., C. & M. R. R.*, 4 Foster (N. H.), 187; *Johnson v. Atlantic & St. L. R. R. Co.*, 35 N. H., 571; *Eaton v. B., C. & M. R. R.*, 51 id., 510; *Mellen v. W. R. R. Corp.*, 4 Gray, 302; *Estabrooks v. Peterborough, etc., R. R. Co.*, 12 Cush., 226; *Parker v. B. & M. R. R.*, 3 id., 113; *Inhabitants of Springfield v. Conn. R. R. Co.*, 4 id., 63; *Babcock v. Western R. R. Co.*, 9 Met., 553; *Dodge v. Co. Comm'rs*, 3 id., 380; *Rowe v. Granite Bridge Corp.*, 21 Pick., 344, 348; *Oregon & Cal. R. R. Co. v. Barlow*, 3 Oregon, 311; *Sater v. B. & Mt. P. P. R. Co.*, 1 Iowa, 384; *Fleming v. C. D. & M. R. R. Co.*, 34 id., 353; *King v. I. M. R. R. Co.*, id., 458; *Hatch v. V. C. R. R. Co.*, 25 Vt., 69; *Sabin v. V. C. R. R. Co.*, id., 370; *Clark v. Vt. & C. R. R. Co.*, 28 id., 106; *Phila., W., etc., R. R. Co. v. Trimble*, 4 Whart., 47; *Young v. C. & N. W. R'y Co.*, 28 Wis., 171; *Chapman v. O. & M. R. R. R. Co.*, 33 id., 639; *Lawrence v. G. N. R'y Co.*, 6 Eng. R'y and Canal Cas., 656. 2. That the value of the land taken must be estimated as of the time of the legal taking, i. e., the time when the award was made; and the court erred in the instructions given and in refusing those asked by the defendant. *M. & M. R. R. Co. v. Eble*, 4 Chand., 81; *Robbins v. Railroad Co.*, 6 Wis., 642; *Driver v. Railroad Co.*, 32 id., 578; *S. F. & S. J. R. R. Co.*

*v. Mahoney*, 29 Cal., 116; *Hursh v. Railroad Co.*, 17 Minn., 444; *M. R., F. S. & G. R. R. Co. v. Owen*, 8 Kans., 409; *S. J. & D. C. R. R. Co. v. Orr*, id., 419; *O. & C. R. R. Co. v. Barlow*, and *Dearborn v. R. R. Co., supra*.   3. That the court erred in refusing all the instructions asked by defendant, by a single refusal, if any one of them was correct.   *Nisbet v. Gill*, 38 Wis., 661; *Eldred v. Oconto Co.*, 33 id., 153.

*George R. Gardner*, for the respondent, argued, 1. That the award of the commissioners was valid.   In the absence of any evidence to the contrary, the court will presume that the commissioners were appointed while the defendant's charter was in force, and that the oath was taken in conformity to the law in force at the time of the award.   In *Moore v. Railroad Co.* and *Bohlman v. Railway Co.*, the contrary appeared affirmatively from the record.   Moreover, if the proper oath had not been taken, the appeal, which concedes the right of the commissioners to act, would cure the defect.   See brief of counsel for plaintiff in error, 34 Wis., 174.   2. That the rule which requires the value of the land to be assessed as it was at the time of the award, refers to the value of the land at that time without reference to what the company had done to increase or decrease its value; in other words, what the value would have been at the time of the award, if the company had never entered upon it, or constructed its track across it.   If it were otherwise, then the railroad bed, ties and rails which had become a part of the realty at the time of the award, must be taken into consideration in determining its value.   Plaintiffs, after recovering the value of the land at the time of the award, cannot bring an action for the difference between that value and the value of the land when defendant first entered upon it.   Such difference in value is damage to the freehold; and, the law having prescribed a mode of proceeding by award to ascertain the amount of such damages, that mode only can be pursued.   *Pettibone v. R. R. Co.*, 14 Wis., 443; *Ford v. Railroad Co.*, id., 609; *Davis v. Railroad Co.*, 12 id., 16.   If, then,

plaintiffs cannot recover those damages in this proceeding, they are without remedy, and their property is taken without just compensation.   3. That proof of the value of the land in 1872 was properly admitted as a means of ascertaining what its value would have been in 1875 if the road had never been constructed.   4. That the defendant was not bound to construct culverts through its road-bed for the passage of mere surface water (Angell on W. C., 6th ed., 108; *Pettigrew v. Evansville*, 25 Wis., 223; *Hoyt v. Hudson*, 27 id., 656); and that, as there was no evidence that defendant's road obstructed any natural watercourse through this land, or that it was improperly constructed, defendant's second instruction was properly refused.

Lyon, J.   In *Railroad Co. v. Eble*,. 3 Pin., 334 (4 Chand., 68), it was held that the value of lands taken for railroad purposes is to be fixed as it is at the date of the appraisement by the commissioners appointed to appraise the same, and not as at the date of the location of the line by the company. The rule there laid down has been steadily upheld by this court ever since.   *Robbins v. R. R. Co.*, 6 Wis., 636; *Kennedy v. Railway Co.*, 22 id., 581; *Driver v. Railway Co.*, 32 id., 569; *Aspinwall v. Railway Co.*, 41 id., 474.   The rule manifestly extends to the appraisement of damages to lands not actually condemned to the use of the railroad company, but which are injured by the location and construction of the railroad over contiguous lands of the same owner; for such damages are part and parcel *of the value of the lands taken*.   *Bigelow v. Railway Co.*, 27 Wis., 478; *Bohlman v. Railway Co.*, 40 id., 157.

When the damages to such contiguous lands are appraised by the commissioners before the railroad is constructed, the appraisal should be made with reference to the effect upon them of the railroad when properly constructed.   If the appraisal is not made until after the railroad is constructed, it should, we think, be made on the same basis.   If it is prop-

erly constructed, its actual effect upon the contiguous lands should control the appraisal; but if improperly or negligently constructed, no additional damages should be given for that reason. The remedies of the land-owner in such a case are to compel the company, by appropriate judicial proceedings, to construct its road in a proper manner, or by a common-law action to recover damages for its failure to do so.

It would seem that a railroad company must, of necessity, be permitted to go upon lands for the purpose of surveying and locating the line of its road; for, until the line is located, condemnation is impossible. But it is the duty of the company to procure a license from the owner of the land upon which such line is located, or title to the easement in it by purchase or condemnation, before it proceeds to construct its road. If it proceeds to construct its road on the land of others without obtaining in some manner the legal right to do so, it is a trespasser, and liable to respond in damages in a common-law action; and it may also, by appropriate judicial proceedings, be enjoined from further prosecuting the work, or be ejected from the land.

It frequently happens, however, that these companies construct and operate their roads over lands which they do not own, without lawful authority. When condemnation proceedings are instituted in such cases, perhaps after the road has been in operation for years, difficulties sometimes arise in the application of the rules above stated. For example, it has been claimed that the structures which the company has placed upon the land without authority have become a part of the realty, and belong to the owner of the land; and hence, that in a subsequent condemnation of the land, its value, including such structures, is the rule of appraisement. On the other hand, it has been claimed that if the construction of the road has greatly injured and reduced the value of the contiguous lands of the owner, such reduced value is the rule of appraisement, without regard to what would have been its value had

the road not been constructed. These examples are given be-
cause they are pertinent to the present case.

It seems to us that these propositions rest on the same prin-
ciple, and that, if either is sound, both of them are. If the
owner must accept the reduced value of his contiguous lands
caused by the unlawful act of the company, as the basis upon
which his damages are to be determined, it seems inevitable
that he is entitled to the value of the land taken, increased
by the same unlawful act.

But we are of the opinion that neither of the above propo-
sitions states the law correctly. We think that the land actu-
ally appropriated by the company should be appraised at its
present value, excluding the structures placed upon it by the
company — that is, at what its value would be, had the struc-
tures not been placed there; and that damages to the contigu-
ous land of the same owner should be appraised on the same
principle — that is, on the basis of the present value of the
land, or what would be its present value had the railroad not
been constructed.

Manifestly, it would be unjust to compel the company to
pay the owner for structures placed upon the land by the com-
pany at its own expense, and in view of a subsequent condem-
nation of the land to its use; and it would be equally unjust
to permit the company, by its own unlawful act, to reduce
the damages to the contiguous lands which otherwise it would
be compelled to pay. It is argued that the owner has his
common-law action for damages done to his land before con-
demnation by the construction of the railroad, and hence that
such damages should not be included in the appraisal of the
commissioners. Suppose he may resort to a common-law ac-
tion to recover such damages: that is no good reason for allow-
ing the company to take advantage of its own wrong to compel
him to do so, when, had it performed its legal duty in the prem-
ises, the whole damage would have been determined in the

condemnation proceedings, and multiplicity of actions thereby avoided.

Applied to the present case, the rules above stated require that the land taken by the defendant company should be appraised by the commissioners at what its value would have been when their award was made, if the railroad had not been constructed upon it; and on the trial of the appeal in the circuit court, the same rule should govern. The damages to the contiguous land of the plaintiffs should also be determined on the same principle. Were these rules observed in making the assessment of damages in the circuit court?

1. The court admitted evidence of the value of the land in 1872, as well as in 1875. But we do not understand that such evidence was received for the purpose of basing the assessment of damages upon the value in 1872, but rather to aid the jury in determining what would have been the value of the land had its condition in 1872 remained unchanged. Such, we think, was the meaning of the learned circuit judge when he said to the jury: "In fixing the damage, you take into consideration the value of the land at the time before the road was built;" for in the balance of his charge to the jury he constantly employs the present tense when speaking of the value of the land. True, the jury were not told in terms that the assessment must be made on the basis of what its value would have been on July 1, 1875, had its condition remained unchanged, and no such instruction was asked. Instructions were asked on behalf of the defendant which stated the rule correctly as to time, but which gave a wrong basis for the assessment. The court very properly refused to give them.

But, conceding that the court erred in this behalf, the error was harmless, for the reason that there is no proof whatever that the land was worth more in 1872 than it would have been worth in 1875, in the same condition. Different estimates of value in both those years were given by witnesses, but there is no proof of the relative value in those years. Had the jury

been instructed to award damages on the basis of the value in 1872, we think they must necessarily have awarded the same damages that they would have awarded had the correct rule been given. Hence we conclude, that, if there was error in the charge or refusals to charge, or in the admission of evidence on the subject of value, such error could not have prejudiced the defendant.

2. The judge refused to submit to the jury the question whether the railroad was properly constructed across the plaintiffs' land. The evidence tended to prove that no culvert had been placed under the road-bed to permit the passage of water to that part of the cranberry marsh south of the road. It is argued that the jury might have found that for want of such culvert the road was not properly constructed; and that, if they had so found, their verdict would necessarily have been for a less sum. Had there been proof that the railroad was built across a watercourse, the want of a culvert sufficient for the passage of the water in its natural channel would be an imperfection. *Young v. Railway Co.*, 28 Wis., 171. But there is no such proof, and there is nothing in the evidence which tends to show that the road was not properly constructed. Hence, the refusal of the judge to submit the above question to the jury, is not error.

3. It is suggested in the brief of the learned counsel for the defendant, but not argued, that, under the rulings of this court in *Moore v. Railroad Co.*, 34 Wis., 173, and *Bohlman v. Railway Co.*, 40 id., 157, the award of the commissioners in this case is void; and hence, that the subsequent appeal therefrom to the circuit court is a nullity. The objection is not well taken. It appears by recitals in the award, that the commissioners were appointed under the charter of the defendant (P. & L. Laws of 1866, ch. 540), and that, before making such award, they took the oath "required by law." It does not appear when they were appointed or what was the form of their oath. The award was made after the enactment of the

general railroad act, ch. 119, Laws of 1872. This is all the record discloses concerning the appointment or oath of the commissioners. The distinction between this case and those last above cited is obvious. In those cases noncompliance with the act of 1872 appeared affirmatively; in this case it does not. In accordance with well established rules of law, it must here be presumed, in favor of the legality of the acts of the commissioners, that they were appointed before the enactment of ch. 119 of 1872, and that they took the oath prescribed in the latter act.

It is believed that the foregoing observations dispose of all the alleged errors relied upon as cause for reversing the judgment of the circuit court. Failing to find any material error in the rulings of that court, we must affirm its judgment.

*By the Court.* — Judgment affirmed.