JACKSONVILLE, TAMPA & KEY WEST RAILWAY COMPANY, APPELLANT, VS. CHAS. S. ADAMS, APPELLEE.

1. A judgment in ejectment against a body having the power of eminent domain is not a bar to the exercise by such body of such power as to the land recovered in the action of ejectment.

2. Where a body possessing the power of eminent domain has entered upon land without leave of the owner and without complying with the law regulating the exercise of such power, it may condemn the property entered upon, and thereby secure the right to the legal possession and enjoyment thereof; and this, whether it has or has not been ousted from its former or illegal possession.

3. Where a railroad company having the power of eminent domain has entered upon land without the consent of the landowner and without complying with the law regulating the exercise of such power, and has constructed a railroad track thereon, the value of the improvements thus put by the company on the land cannot be included in estimating the damage sustained by the landowner, in proceedings subsequently instituted under such law by the company or its legal successor having similar power to condemn the land, or an easement therein to the company's use; and this, whether the company has been ousted from the former possession or not.

4. Where a railroad company having the power of eminent domain has entered upon land without the consent of the owner and without a certain material requirement of the law regulating the exercise of such power having been complied with, and there has been a judgment in ejectment in favor of the landowner against such company or its legal successor, a lessee for ninety years, and the judgment is affirmed on appeal, the appellate court may, no conduct in bad faith upon the part of the company appearing, withhold its mandate of possession to allow a reasonable time for the institution and consummation of new condemnation proceedings. If the new condemnation proceedings are resisted by the landowner and are dismissed by the trial court on the ground that there is no constitutional law authorizing the same, and this order is appealed from by the company, the appellate court may withhold its mandate for possession until the decision of such appeal, but it should do so only upon the express condition that its action shall not interfere with the landowner's right to sue for *mesne* profits for the use or retention of the land by the company.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion.

Motion to issue mandate for possession.

*A. W. Cockrell & Son* for Motion.

*J. R. Parrot* and *T. M. Day, Jr., Contra.*

RANEY, C. J. :

In the main opinion in this cause, 27 Fla., 443, 9 South. Rep., 2, a judgement in ejectment ·in favor of

the appellee, who was plaintiff, was affirmed. Having discovered in our investigations that it was the practice in some appellate courts to withhold the mandate of *possession* until condemnation proceedings could be prosecuted, we suggested that any motion for such withholding must be made within thirty days. A motion of the character indicated was made by appellant and resisted by appellee, and the mandate for possession was withheld for full consideration of the point.

Pending our consideration of the subject, the appellee moved that the mandate for possession should be sent down, the grounds of this motion being : 1st. That sufficient time had elapsed to enable the appellant to institute and consummate the proceedings contemplated in the order of the court withholding the mandate; 2nd. That proceedings had in fact been instituted and pursued to a final judgment of the Circuit Court of Volusia county, rendered August 10th, 1891, refusing to confirm the condemnation of the lands now occupied by the appellant, and sought to be condemned; such refusal being on the ground, urged by the appellee, that since the adoption of the present Constitution of this State there has been no valid constitutional legislation authorizing such condemnation.

As stated in the main opinion, the original condemnation proceedings were instituted in August, 1885, not by the appellant company, but by the Atlantic Coast, St. Johns and Indian River Railroad Company, of which the appellant company leased the road in December of the same year for the period of ninety-nine

years. It is now shown that on the first day of April of the present year, and within less than thirty days of the filing of the former opinion, it having been filed March 4th, the appellant company filed a petition in the Circuit Court of Volusia county, signed and sworn to by an attorney of the company, stating that the company exists under the laws of the State; that the railroad of the company is now constructed on and across the lands in question, describing them, and that such lands are essential for the use of the corporation, and that the corporation has made its survey and maps thereof by which its road or line is designated, and that it has located its road according to such survey, and has filed certificate of such location, signed by the engineer of the corporation, in the office of the Clerk of the Circuit Court of Volusia county; that the use of such lands is necessary for the purpose of operating the railroad, and that petitioner has not acquired the right to use the same; that petitioner is in possession of the portion of the land actually occupied by the railroad track, and that the appellee, administrator, &c., is in possession of the balance, and that he and Helen Maria Adams, in their own right, own or claim to own the land. The prayer of the petition is for an order for summoning a jury to appraise and value the land and fix the amount of compensation to be paid to the owners, and for such proceedings as are requisite for the petitioner to acquire the right to hold and use the premises for its corporate purposes.

On the day last named the Circuit Judge made an order directing the sheriff to summon twelve disinterested freeholders, registered voters of Volusia county, as a jury to meet at the court house on the 7th day of the same month, at an hour stated, to proceed under their oaths, duly administered so to do, to take steps to appraise and value the land described in said petition and order, and to fix the amount of the compensation to be made to the owners of the land by the petitioning corporation. On the 8th of April the jury, who appear to have been sworn, met on the premises, Charles S. Adams appearing for himself in person, and Helen M. Adams appearing by him as her attorney, and the jury then proceeded to view the land and "heard the allegations of the parties," and "appraised, ascertained and determined" the value of the tract of land proposed to be taken, and the damage that would be sustained by the owner by reason of the taking thereof, at fifty dollars, and they fixed the amount of compensation to be made to Charles S. Adams, as administrator, at the same amount, and found that he as such administrator had the sole estate therein, and they state in their report that such "report and verdict are concurred in by ten of the jurors." It is however, signed by the entire twelve.

To this report Charles S. Adams as administrator, and individually, and Helen M. Adams, filed objections of which the fifteenth and subsequent are as follows:

That since the Constitution of 1885 became operative there are no constitutional legislative proceedings authorizing the condemnation proceedings herein sought to be instituted; (16) that Chapter 3595, acts of 1885, as amended by Chapter 3712, acts of 1887, does not preserve to the landowner whose land is sought to be condemned "the right of trial by jury" secured by sec. 29 of Art. XVI of the Constitution, and is void; (17) that such legislation, so far as it involves jury trials, is offensive to sec. 20 of Art. III of the Constitution, which constitutional provision forbids the Legislature from passing special or local laws in regard to summoning and empannelling grand and petit juries; (18) such legislation is offensive to sec. 3 of the Declaration of Rights: "The right of trial by jury shall be secured to all, and remain inviolate forever;" (19) the sum of $50 is wholly inadequate as damages; (20) such legislation is offensive to sec. 11 of Art. V of the Constitution, which ordains a separation of the jurisdiction of the Circuit Court in cases at law and in equity; and for other and further grounds apparent upon the face of the proceedings.

On the 10th day of August, the Circuit Judge made an order sustaining the exceptions and protests, and refusing a confirmation of the report, and also refusing "to order further proceedings in this matter, on the ground of the unconstitutionality of the law authoriz-

ing the same," and dismissing the "case;" to all of which the petitioner excepted.

Upon the entry of this order the railroad company entered its appeal to the ensuing term of this court, the judge fixing the penalty of the appeal bond at three hundred dollars, which bond has been approved, and the transcript of appeal has been filed in this court, and citation issued and service thereof acknowledged.

It is urged as a reason why the.mandate should be issued, or should not be withheld, that the appellee will be entitled to damages onthe basis of the value of the land, including the crossties and rails, and roadbed or works, put and constructed on the land by the company. This in our judgment is not the law. It is true that if persons or corporations vested with the power of eminent domain enter upon and appropriate private property to their use, without the consent of the owner, before taking the steps required by law to condemn the same, the owner may resort to tresspass for damages, ejectment for possession, or to equity for an injunction against the use of the land. Still where such an illegal entry has been made by a body possessing the power of eminent domain, it may condemn the property entered upon and thus secure a right to the possession and enjoyment thereof. If an entry has been made by the express or implied consent of the landowner, it is clear that he should not have the value of what has been put upon the land; and the better authority is that the same rule also applies in the absence

of any consent by the owner.    Lewis on Eminent Domain, sec. 507; Baker vs. R. I. & P. R. Co., 57 Mo., 265.

Though as a general rule, things affixed to the freehold so as to be a part thereof become, as against a tresspasser or person entering tortiously, and affixing them, the property of the owner of the soil, this rule is not applicable as against a body having the power of eminent domain and entering without leave and making improvements for the public purpose for which it was created and given such power.    The principle controlling the landowner's right to damages in such cases is that he shall have compensation for the damage actually sustained by him, and no more, and that the trespasser's liability shall be likewise limited.    This principle is affirmed in Mississippi, Michigan, Iowa, Illinois, Minnesota, Wisconsin, Oregon, Pennsylvania and Alabama.    L. & N. O. R. Co. vs. Dickson, 63 Miss., 380; Morgan's Appeal, 39 Mich., 675; Toledo, A. A. & G. T. R. Co. vs. Dunlap, 47 Mich., 456; Daniels vs. C. I. & N. R. Co., 41 Iowa, 52; C. & A. R. Co. vs. Goodwyn, 111 Ill., 273; Green vs. Goodwyn, 26 Minn., 66; Lyon vs. G. B. & M. R. Co., 42 Wis., 538; O. R. & N. Co. vs. Mosier, 14 Oregon, 519; Justice vs. N. V. R. Co., 87 Penn. St., 28; Jones vs. N. O. & S. R. R. Co., 70 Ala., 227.    See also N. H. & R. Co. vs. Booraem, 28 N. J. (Eq.), 93; Burgess vs. Clark, 13 Iredel (Law), 109; W. N. C. R. Co. vs. Deal, 90 N. C., 110; T. & St. L. R. Co. vs. Matthews, 60 Texas, 215; Deitrich vs. Murdock, 42, Mo., 279; Indiana B. & W. R. Co. vs.

Allen, 100, *Ibid*, 409, 415-16; Lewis on Eminent Domain, sec. 507.

The railroad company, says the Supreme Court of Mississippi, in the case from that State cited above, was a trespasser in constructing its road upon land over which it had not acquired the right of way, but it still had the right to acquire the right of way unaffected by the liability incurred for its trespass; and the trespass is not involved in the determination of the due compensation; the continuing right of the company to secure the right of way, in accordance with its charter, and the nature of its entry on the land and annexing chattels to the soil, distinguish the case from that of a trespasser who affixes chattels to the freehold, and the rule of the common law, established when railroads were unknown, is not applicable. In the latter of the cases cited from Michigan, it being an appeal in a condemnation proceeding, a previous proceeding had been taken by the company, which had thereupon entered and built, and afterwards the condemnation was set aside by the Supreme Court on appeal, because there had been no notice to Dunlap, the landowner. Afterwards the company instituted the new condemnation proceedings. "The railroad company, whether rightfully or wronfully," says the opinion, "laid this track while in possession and for purposes entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railroad track laid on it, the technical rules which apply in some other cases to struct-

ures inseparably attached to the freehold. Whatever rule might apply in case of abandonment, it is clear that this superstructure was never designed to be incorporated with the soil except for purposes attending the possession and in proceeding to obtain a legal and permanent right to occupy the land for this very purpose, there would be no sense in compelling them to buy their own property. Whatever right of redress, if any, Dunlap may have for the tortious occupancy previous to these proceedings, or whatever right of property he might have in case the company abandoned the road entirely and left the track untouched, we think that so long as it is in possession and legal measures are proceeding to secure a right to retain it there, this structure belongs to the company, whether intruders or not." In Daniels vs. The C. I. & N. R. Co., *supra*, Daniels, without whose permission the company had entered and built, recovered judgment in an action for possession against the company, and the judgment was affirmed on appeal, Daniels vs. C. I. & N. R. Co., 35 Iowa, 129, and then the company instituted condemnation proceedings. "Plaintiff," says the opinion, "has suffered no greater damage than would have occurred to him, had the defendants pursued the course pointed out by the statute which they are not, by this proceeding, pursuing. By these proceedings plaintiff is not deprived of the title to the land; the defendant acquires nothing more than the right to occupy it for railroad purposes. Had they been instituted prior to, or upon defendants taking

possession of the land, no different right would have been acquired by them than they obtain in the present action. In each case the measure of the plaintiff's damages is the same, namely, the value of the land without regard to benefits resulting from the improvement." In the same State it is held that a railroad company acquires no right to the land until payment of damages. Henry vs. D. & P. Ry. Co., 10 Iowa, 540. The just compensation required to be given, observes the Supreme Court of Illinois in C. & A. R. R. Co. vs. Goodwyn, is for that which is taken from the owner, and which is of value to him, and not for something he never owned. In Justice vs. N. V. R. Co., *supra*, the Pennsylvania case there had also been a judgment in ejectment in favor of the landowners. The court held that the entry was not the case of a mere trespass by one having no authority to enter, but of one representing the State herself, clothed with the power of eminent domain having the right to enter and place the materials on the land taken for public use, materials essential to the very purpose which the State has declared in the grant of the charter; yet a trespass by reason of the omission to do an act required for the security of the citizen, to-wit: to make compensation or give security for it; for which injury the citizen is entitled to redress; but not beyond his injury, nor extending to taking the personal chattels of the railroad company laid down for the benefit of the public. The silent features distinguishing the case from that of an ordinary trespass were held to be : the right to enter

on the land under the authority of law to build a railroad for public use; the acquisition thereby of a mere easement in the land; the entire absence of an intention to dedicate the chattels entering into its construction, to the use of the land; the necessity for their use in the execution of the public purpose; and lastly, the power to retain and possess the chattels and the structures they compose, by a valid proceeding at law, notwithstanding the original illegality of the entry. The reasoning of the Supreme Court of Alabama in Jones vs. N. O. & S. R. R. Co., *supra*, is substantially the same as that of the Pennsylvania court.

The cases relied upon by the appellee to support his contention, do not overcome the conclusions reached by us. In N. Y. & G. L. Ry. Co. vs. Stanley's Heirs, 35 N. J. (Eq.) 283, the same rule as to damages was enforced, and an injunction granted to restrain an action of ejectment. The original entry had, however, been made under an agreement between a predecessor railroad company and the landowner, of which agreement such railroad company had not, nor had any of its successors, carried out the undertaking to erect a certain depot. It was remarked in this case, as pointed out by appellee's counsel, that on no other hypothesis than this agreement would the appellant have a standing in court to stay the landowner's suit for possession, but of this language it is observed in Patterson, N. & N. Y. R. Co. vs. Kamlah, 42 N. J. (Eq.), 93, 98, that

the court was not laying down the rule to be observed
in all cases, but was speaking merely with reference to
the particular circumstances of that case.   Shroeder
vs. De Graff, 28 Minn., 299, S. C. (Schroeder vs. First
Div. St. P. & P. R. Co.,) 5 Am. & Eng. R. R. Cases,
298, was an action of trespass to recover damages
against a railroad company for constructing a road
across the plaintiff's land without his permission, and
it was held that if the ties and rails had increased
the value of the farm, the fact of such increase should
be considered in estimating the amount of damages,
but if the farm was in no way benefitted or enhanced
in value by the ties and rails being laid across it, no
deduction from the damage actually done to the farm
should be made on account of the value of the ties and
rails.   The question of whether the value of the ties
and rails should be excluded or be included in valuing
the land on a condemnation proceeding was not before
the court, nor mentioned.   It is true the lower court
instructed the jury, in connection with the doctrine
just stated, that the ties and rails had become a part
of the realty, but the theory of the decision as to the
rule of damages was that the landowner could not
be made the unwilling purchaser of the ties and rails,
or required to pay for them by crediting their value
on damages done the land in constructing the road.
In Cohen vs. St. L. Ft. S. & W. R. Co., 34 Kansas,
158, S. C., 22 Am. & Eng. R. R. Cases, 116, the rail-

road company had entered with the ascent of the plaintiff or his agent, and the plaintiff sued in trespass. There was on the land at the time of the entry *an old grade which had been constructed by another company and abandoned*. It was held that the increased value given to the land by the presence of the old grade should be considered in estimating the damages, but that such increased value was not necessarily what it had cost to build the grade; yet it was also held that no recovery could be had for the increased value given the land by *the improvements put on it by the defendant company*. In this opinion it is moreover said : " It has even been held that where a railroad company enters upon land as a technical trespasser, and afterwards procures the land for its right of way by condemnation proceedings, it is not compelled to pay for the improvements which it, itself, made upon the land while it was technically a trespasser, and before it legally procured its right of way." (Citing 87 Penn., 28; 41 Iowa, 52; 42 Wis., 538; 26 Minn., 66, *supra*.) "This," observes the opinion, "seems like justice." The decision in Hunt vs. M. P. Ry. Co., 76 Mo., 115, is that where a railway company, having obtained a decree for the condemnation of a tract of land without the knowledge of the owner, erected upon it a building of a permanent character for a depot, and afterwards the decree was held void, the building becomes a part of the realty and *could not be removed by the company*. The facts in Price vs. Weekwaken Ferry Co., 31 N. J. (Eq.), 31, were,

that a railroad was built on land on which complainant held a mortgage of prior date duly recorded, and the charter of the company did not permit the building of the road there, but expressly prohibited it.   The road was not built under condemnation proceedings, but under a grant of right of way from the mortgagor. The question was, whether one having a lien on the railroad for building the same could have the track or impovements reserved from a sale under the mortgage. The opinion holds that there was no paramount power of condemnation like that in N. H. C. R. R. Co. vs. Booraem, 28 N. J. (Eq.), 430, (cited *supra*) no power, (the right of eminent domain) to take the property superior to the right of both mortgagor and mortgagee; that where such power exists, it confers the power to take the property on making just compensation, which compensation, in so far as the value of the land is concerned, is to be estimated as of the time when possession is taken, and therefore cannot include the value of improvements subsequently put on the property by the party entering under such right, but when the entry is not under that right, the right to take the property on making compensation does not exist, and the party entering and improving does both subject to the right of the prior mortgagee to sell both the land and such improvements.   Meriam   vs.   Brown, 128 Mass.,  391, is to the effect that a railroad corporation which has constructed its track upon a person's land without filing a written location or presenting a plan thereof, or paying or tendering to the landowner any

damages for the land so taken, cannot enter upon the land for *the purpose of removing the rails laid upon the roadbed, and structures placed upon the land*; such property becomes a part of the realty; and the fact that the original entry and construction were made without objection from the mortgagor in possession cannot avail against the title acquired by the mortgagee by the subsequent foreclosure of the mortgage. The mortgage was of a date prior to the construction of the road. L. E. & W. R. Co. vs. Kinsey, 87 Ind., 514, S. C. 14 Am. & Eng. R. R. Cases, 309, decides that where a railroad company has entered, as it legally might under condemnation proceedings, it having deposited the amount assessed by the appraisers, and there is an appeal, and on the appeal the assessment has been increased, but the company has not paid the increased amount, that the owner may recover in ejectment without paying for the improvements placed on the land. In Graham vs. Connersville & N. C. J. R. Co., 36 Ind,, 463, the conclusion reached is, that where a railroad company has, without the consent of the owner and without color of title entered upon land and occupied the same, building a depot and hotel thereon, and afterwards seeks to appropriate the land under the authority of law, the value of the land at the time of the legal appropriation, with the improvements thereon, constitutes the amount for which the company is liable to the owner of the land.

In California, in C. P. & R. Co. vs. Armstrong, 46

Cal., 85, condemnation proceedings had been commenced against a large number of land-owners, but there was no service as to the owners of one tract, yet pending such proceedings it was built upon by the railroad company. There was judgment as to the other lands, but none as to this tract, which the owners sold to Armstrong. Afterwards the proceedings was dismissed as to the particular tract, and new proceedings of condemnation were begun against Armstrong. There had been an order of court in the former proceeding allowing the railroad company to enter upon and retain possession of the lands pending the proceedings, and bond had been given as required by the statute. Answering the contention that the value of the improvements should be included in estimating damages in the second proceeding, it is said by the court. "Neither the constitution nor the statute contemplates that a person, whose land is taken in the exercise of the right of eminent domain, shall be entitled to anything beyond a 'just compensation.' He is to be paid the damage he actually suffers, and nothing more. But, to hold that, in addition to the fair value of the land taken, and such other damages as he may suffer by severing it from the remainder of his tract, he shall also recover the value of a railroad track, in the construction of which he never expended a dollar, and which was built by the plaintiffs at their own expense, would be to defeat the obvious intent of the statute by an over-technical construction of it." In United States vs. Land in Montery County, 47 Cal.

515, a condemnation proceeding was begun by the government in 1870 against lands which it had in 1854 entered upon against the will of the owners, erecting thereon a store building which it had ever since occupied as a light house; and it was held that the value of the improvements should be included in estimating damages. "The law," says the opinion, "did not authorize the United States to take the possession of these lands *manu forti*, and their agents, in entering upon them and ejecting the defendants were mere tort feasors. The case, is, in this important respect, wholly unlike that of the California Pacific Railroad vs. Armstrong, 46 Cal., 85. In that case the road track was constructed by the railroad company while its possession of the land of the defendant was rightful, being held at the time in pursuance of pending proceedings for its condemnation; and these proceedings having been dismissed after the construction of the track." The latter of these cases is also cited by the appellee. It does not pretend to overrule the former case, but distinguishes the two by the character of the original entry.

Of the cases cited by the appellee, that of Graham vs. C. & N. C. J. R. Co., 36 Ind., 463, alone can be claimed to be authority for the contention that in an authorized proceeding for condemnation, the improvements put upon the land by a railroad company having the right to exercise the power of eminent domain, yet not doing so in a valid manner, should be included in estimating the landowners' compensation or dam-

ages.   If it be that the rule of the former of the California cases is not more applicable than that of the latter to the facts of the case before us, of which we are not at all satisfied, our views are not shaken by the latter case.

The clear weight of authority, the better reasoning and true right of the matter are against the position of appellee.

II.   The authorities at our hands bearing directly or by analogy on the subject of the power and duty of this court to suspend the warrant are those mentioned in the succeeding paragraph.

In Pittsburg & Steubenville R. Co. vs. Jones, 59 Penn. St., 433, the railroad company had entered upon the land under an agreement to purchase, and had built its track thereon.   The company failed to pay the purchase money, and there was a decree in favor of the vendors for the sale of the property for the amount due, and the same was sold by the sheriff under the decree, and the purchasers brought ejectment against the company.   There had never been any condemnation proceedings against either the former owners or the purchasers at the sheriff's sale.   It was said that the sheriff's vendees took the whole title to the land, the legal title of the vendors and the equitable title of the railroad company, and not subject to any easement or right of the company to use any part of it for the track of its road.   But it was held by the court that the company under the provisions of its charter

650　　　　　SUPREME COURT.

J. T. & K. W. Ry. Co. v. Chas. S. Adams.—Opinion of Court.

had the undoubted right to appropriate the land and to acquire a right to its use upon making compensation to the owners for the damage sustained thereby; and that as the land was indispensably necessary to the company, and the company had the right indicated, it was but just and equitable that, while affirming the judgment in ejectment, all proceedings thereon should be ordered stayed for such reasonable time as might be necessary to enable the company to take proceedings to condemn the land; and that there was no doubt of the court's authority to make the order, or of the propriety of the order, under the circumstances. O'Hara vs. Pennsylvania R. R. Co., 2 Grant's Cases, 243. (See also U. S. Digest, vol. 5, first series, p. 300, sec. 150.) In Pittsburg & Lake Erie R. Co. vs. Bruce, 102 Penn. St., 23 a canal company which had condemned and acquired the easement of a right of way over, and not a fee in, the lands appropriated by it for canal purposes, and afterwards became insolvent and all its properties and franchises were sold to a railroad company, and it was held that the latter company could not construct tracks on such canal right of way without making compensation to the owner of the land, and that the owner of the fee was entitled, where such tracks had been laid without making or tendering compensation, to recover in ejectment against the railroad company. That the canal having been abandoned, as such its charter as a highway went with it, and the use and occupation of the land reverted to the owner in fee. "We may," says the opin-

ion "here add in order to avoid all mistakes and misapprehensions, that the defendants might secure a right of way and secure the work and property which it has put upon the plaintiff's land by having an assessment of damages as provided by law, and if the plaintiff should refuse a stay of execution until that can be accomplished, the court below on application may for that purpose interpose its injunction." Citing Justice v. N. V. R. Co., 87 Penn,, St., 28, in which execution had been stayed in the lower court. The case of Conger vs. B. & S. W. R. Co., 41 Iowa, 419, is one in which the railroad was built with the knowledge, but without any express permission, of the landowner. The landowner took proceedings to have the damages assessed and afterwards brought ejectment, the damages not having been paid. The doctrine that the fact that the landowner knowingly permits a railroad company to enter upon his land and build its road, does not estop him from maintaining an injunction restraining the company from using the right of way without making compensation therefor, is fully recognized; Hibbs vs. C. & S. W. R. Co., 39 Iowa, 340; and it is asserted that there is no difference in this respect between a proceeding for an injunction and an action of ejectment. The judgment in favor of the landowner was affirmed; but the court said that the action was to be regarded as a mere means of coercing payment of the damages. * * That if the damages had not been assessed, the defendant might, notwithstanding the action, cause the

damages to the landowner to be assessed, and upon payment of them could have the execution, if issued, recalled, and would be entitled to the aid of a court of equity for that purpose, but that in this case, as the damages had been assessed, nothing but payment of them was wanting to entitle the defendant to the continued use of the plaintiffs land, and a suspension of the execution ordered. In Patterson, Newark & New York R. Co. vs. Kamlah, 42 N. J. (Eq.), 93, Kamlah claiming that he had never received compensation for land used by the railroad company, brought ejectment to recover the land, and thereupon the company obtained a preliminary injunction to stay the action, on the ground that it had the legal title to the land, but being unable to establish it, prayed a discovery, and also insisted that if it should be unable to establish its legal title, it had an equitable title which equity ought to protect by decreeing that it retain possession of the premises and consumate its right thereto by awarding just compensation to Kamlah. It was held, after answer, that the injunction should be retained, on the ground that the possession of the premises was originally taken with the knowledge of Kamlah, and continued for about twenty years as part of the com- plainant's road, with defendant's acquiescence, during which time various negotiations had been between the parties as to compensation, and that the company, the land being indispensable to it, might, by proceeding under its charter, condemn the land, or, if it had not

such charter power to condemn, it might make com-
pensation, to be ascertained and awarded in the court
of equity.    In this case it was said : " Where posses-
sion has been taken of land for a public work, and the
work has been constructed upon it, but no compensa-
tion has been made for the land, if the company in
taking possession has acted in good faith under acqui-
escence of the owner, or by mistake as to the property, or
as to the validity of the authority given it so to occupy,
and the property is in public use, equity will not per-
mit the company to be disturbed in its possession, pro-
vided it make compensation if equity shall so require."
Bartleson vs. City of Minneapolis, 33 Min., 468, de-
cided June 15, 1885, is a case in which there had been
condemnation proceedings and an award of $400, in
August, 1881.    The law regulating the subject provided
that after the award became final, the city council
should cause the amount thereof to be paid, and that
in case such payment was not within one year after
the confirmation of the award, or the determination of
an appeal, the proceedings should be deemed to be
abanoned, and that before the payment of the award
the owner should furnish an abstract of title showing
himself to be entitled to the damages allowed, and
that in case of neglect to furnish the abstract, or of
doubt, the amount awarded should be set apart for
whomsoever should be entitled to it and should be
paid to any person showing himself to be so en-
titled.    It was admitted on the trial that the plain-

tiff was the owner except for the condemnation proceedings shown by the defendant. No compensation for the land was ever paid or set apart until July 25, 1884, when the city council set apart in city treasury the sum of $400. It was held that the condemnation proceedings were by the failure to pay or set apart the amount of the award within one year, *ipso facto* abandoned, and that Bartleson was entitled to recover in ejectment. At the close of the opinion is the following observation : To the suggestion that the court may grant to the city equitable relief in the premises, and upon equitable considerations, sustain its possession, it is enough to say that if the city could upon any case be relieved from the consequences of the council's failure to comply with the law, no case is presented by the pleadings or made by the facts found. In the cases of Harrington vs. St. Paul & Sioux City R. R. Co., 17 Minn., 215; and Lohman vs. St. Paul, Stillwater & Taylor's Fall R. R. Co., 18 Minn., 174, in the former of which cases no proceedings to condemn had been taken, and in the latter there was, as here, a failure of the commissioners to give notice to the landowner, it was urged that the land-owner was entitled to an injunction against the further use of the premises by the railroad company, but a stay was allowed to permit the institution of condemation proceedings. In the latter of these cases it is remarked : "But it appears that under this appeal, or by some arrangment of the parties, the defendant has constructed and is now operating the road over de-

fendant's land, so that great public inconvenience would result if the injunction were to be enforced, and as it further appears from defendant's answer that the proceedings to condemn were taken in good faith and with an honest purpose on the part of the plaintiff to comply with the law, we are of the opinion that the injunction should not be allowed to become operative until suitable opportunity is given to defendant to acquire the right to appropriate plaintiff's land, either by negotiation or by fresh proceedings to condemn." In Strong vs. City of Brooklyn, 12 Hun, 453, the plaintiff recovered judgment for possession of a piece of land which the city was using for public purposes, and the city obtained an order staying the enforcement of the judgment, on the ground that it was about to condemn the land. The order was reversed by two Justices, they holding that generally stays of process are granted by reason of something which has taken place pending the litigation, or after the rendition of the judgment, and that if no reason of that kind exists, the judgment must have its full force, and that no distinction was to be made in the case of a body entitled to the right of eminent domain. In Story vs. N. Y. Elevated R. R, Co., 90 N. Y., 122, 179, where it was held that the elevated street railroad structure which the company was, at the commencement of the suit, about to erect, and had since then actually erected, constituted a taking and appropriation of plaintiff's property without compensation, of the seven conclusions reached by the

court, as summarized in the opinion of Tracy, J., the seventh was : "The injunction prohibiting the continuance of the road in Front street should not be issued until the railroad company has had reasonsble time after this decision to acquire the plaintiff's property by agreement, or by proceedings to condemn the same." In treating of injunctions to prevent the use of property until damages are paid, it is said by Lewis on Eminent Domain, sec. 634, citing Young vs. Harrison, 6 Ga., 130; Gammage vs. Georgia Southern R. R. Co., 65 Ga., 614; Lohman vs. St. Paul, Stillwater & Taylor's Falls R. R. Co., 18 Minn., 174; White vs. Nashville & Northwestern Railroad Co., 7 Heisk., 318, that where the right to relief exists at the time of filing the bill, but the defendant has the power to acquire the property, and an injunction will be prejudical to the public or the defendant, and its postponement no detriment to the plaintiff, the court will withhold the injunction until a reasonable opportunity is afforded to ascertain and pay the compensation. The authorities sustain the text. See also Harrington vs. St. Paul & Sioux City R. R. Co., 17 Minn., 215.

All of these cases, except that of Bartleson vs. City of Minneapolis, 33 Minn., 468, and Strong vs. City of Brooklyn, 12 Hun, 453, sustain either expressly or by analogy the power to withhold the mandate for the purpose desired in this cause, and the excepted cases are not, considering the facts of this case, authority

against our power or duty to so do. The power of courts to temporarily stay the issuing of executions is exercised, says Mr. Freeman, in an almost infinite variety of circumstances, in order that the ends of justice may be accomplished. In many cases this power operates almost as a substitute for proceedings in equity, and enables the defendant to prevent an inequitable use of the judgment or writ. Freeman on Executions, sec. 32 ; Mitchell vs. Duncan, 7 Fla., 13 ; Robinson vs. Yon, 8 Fla., 350; Granger vs. Craig, 85 N. Y., 619. The withholding of the writ of possession in cases of this kind rests upon the same principle that the withholding of an injunction is founded on.

There is no such difference between the Constitution of our State and those of the States in which the above decisions were made as makes these decisions inapplicable here.

The power invoked is one liable to be abused ; Freeman on Executions, sec. 32 ; and should, in our judgment, be exercised with extreme caution, but we are entirely satisfied that the case before us is a proper one for its exercise.

The facts af the case are of course such as necessitated the affirmance of the judgment in ejectment in favor of the appellee, yet it is true that the appellant is a lessee under the company by which the original condemnation proceedings were instituted, and that the

42

658                    SUPREME COURT.

J. T. & K. W. Ry. Co. v. Chas. S. Adams.—Opinion of Court.

appellee whose action was not commenced till March,
1887, knew early in 1885 that the lands were occupied,
which occupation must, as the lease was not made till
December of that year, have been by the lessor com-
pany, although the appellee does not say which com-
pany it was. It is also true that there is in the record
such evidence of notice having been given to the ap-
pellee by the condemnation commissioners, by adver-
tisement, as renders the contest of the title by the ap-
pellant one of good faith as it does its entry under the
lease, and there is nothing in the record tending to show
that the appellant has acted otherwise than in good
faith and with honest purposes in any of these proceed-
ings. Moreover, upon the rendition of our judgment
affirming the recovery in ejectment, new condemnation
proceedings were promptly instituted, and duly prose-
cuted, against the resistance of the appellee and the
other owner of the land, and the Circuit Judge dis-
missed them on the ground that our legislation is in-
valid and unconstitutional. From this judgment an
appeal has been taken to this court, and the appeal
transcript has been filed. In view of this decision the
railroad company has certainly done all it can do, un-
less and until the judgment appealed from shall be re-
versed. It is also entitled to a decision of the question
on the appeal. If that judgment is erroneous, the
company should not suffer from it; if it is right, any
damage the appellee may sustain by reason of the pos-

session of the land can be compensated in money, and is wholly inconsiderable in comparison with the damage and inconvenience which the appellant and the public will incur should we refuse to withhold the mandate. To permit the mandate to go now would not only be contrary to the principle and practice announced and established by the above authorities, but, it seems, would, in view of our affirmance of the judgment in ejectment, put it beyond the power of the Circuit Court to grant any similar relief as to its own writ, unless we should direct the allowance of such relief. Freeman on Executions, sec. 32 ; Marysville vs. Buchanan, 3 Cal., 212 ; Dibrell vs. Eastland, 3 Yerger, 506. A judgment in ejectment is never a bar to condemnation proceedings, nor does it award any recovery of mesne profits for occupation of the land after its rendition ; nor can the question of such subsequent mesne profits be considered in condemnation proceedings, they being the subject of an independent action. There has been no obstacle to the collection of the recovery for mesne profits and costs adjudged in the action of ejectment, even if, in view of what has passed at our bar, it could be thought that the same were not paid last spring. The withholding of the mandate should not interfere with appellee's right to sue for the mesne profits accruing subsequently to those recovered in the ejectment action and upon condition that it shall

not, the mandate will be withheld till the further order of the court, and the motion of the appellee will be denied. It will be ordered accordingly.