# CASES

### ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT OF ILLINOIS.

---

THE CHICAGO, PEORIA AND ST. LOUIS RAILWAY COMPANY

*v.*

HENRY H. EATON.

*Filed at Mt. Vernon January 24, 1891.*

1. EMINENT DOMAIN—*measure of damages—as to land not taken—elements to be considered—depreciation in value, generally.* On the question of damages to land not taken for a right of way for a railroad across the same, testimony of witnesses as to the value of the land not taken, with the improvements upon it, is proper, in connection with other evidence of the value of the land after the construction of the road.

2. Where there is evidence showing the value of the land not taken, with the improvements thereon, before the construction of a railroad, and there is other evidence which shows the reduced value thereof as it will be after the construction of the road, this will enable the jury to fix the extent of the depreciation, and, consequently, the amount of the damages caused by the construction and operation of the railroad.

3. In a proceeding by a railway company to condemn a right of way over a farm, the court instructed the jury, that if the land not taken was depreciated in value by the construction and operation of the railroad, the measure of damages was the difference in its market value before and after the construction of the road, and that all the matters and circumstances brought to their attention by the evidence should only be taken into consideration in so far as they aided in determining the amount of such difference : *Held,* that the instruction was correct.

4. Same—*right of way over a dairy and stock farm—depreciation in value for pasturage—as an element of damages.* Evidence that land through which a railway company is seeking to condemn a right of way, is a dairy and stock farm, and valuable for the purposes of grazing and pasturage, and that its value for such purposes will be diminished if allowed to remain open and unfenced for six months after the completion of the road, is properly admissible.

5. Same — *land thrown open — during construction·of railroad, and until fenced—inconvenience occasioned thereby—to be considered.* The inconvenience of having the owner's land thrown open, in the progress of the construction of a railroad through the same, for the six months during which the company is not required to fence its track, is a material element of damages, for which compensation should be given. Therefore, questions to witnesses calling for their opinions as to such damages are proper.

6. In a proceeding to condemn land for a railroad right of way, the trial court instructed, for the land owner, that he was "entitled to recover all the damages that the evidence shows he will sustain by reason of his land being so thrown open, and for six months after said railroad is open to use." On the other side, the court told the jury "that the damages contemplated in law are such, and such only, as are the direct result of the taking of the right of way ; that such damages, to be legitimately allowed, must be direct and proximate, and not remote, and possible, only ; that the inconvenience of using the lands not taken, resulting from the opening of the right of way up to the time the law requires the railroad company to fence its track, is proper to be taken into account in estimating damages to contiguous land not taken :" *Held,* that the first instruction, when considered in connection with the latter, was unobjectionable.

7. Same—*probable damage to stock—too remote.* The law considers the probable damage to stock, by the construction and operation of a railroad through a farm, as too remote and speculative to be considered in estimating the just compensation to be paid for a right of way of the railway company.

8. Same—*flooding land—by trestle-work and embankment, in constructing railroad—as matter of damages.* If the effect of a trestle-work and embankment constructed by a railway company upon a tract of land crossed by such company is to flood a portion of the land, such flooding will constitute a proper element of damage to be considered by the jury in assessing the damages to contiguous land not taken for right of way.

9. Jury fees—*in condemnation proceeding—against whom to be taxed.* It is error to tax the fees of jurors selected, in a proceeding to condemn land for the use of a railroad company, against the petitioner. Such fees are proper county charges.

10. Jury—*service within a year—as a ground of challenge—"regular panel" defined—Eminent Domain act.* Jurors selected under section 6 of the Eminent Domain act do not belong to the "regular panel" mentioned in section 14 of the act concerning jurors, and if a juror selected under the former section has served on a jury within a year past, such previous service is a good ground of challenge. The "regular panel" is the panel selected under the act relating to jurors.

11. Witness fees—*to be taxed—limiting number of witnesses.* In a condemnation proceeding, after the defendant had examined six witnesses on the question of damages to land not taken, the petitioner gave notice that it would move the court to tax the costs of any further witnesses to the defendant. The defendant examined nine other witnesses, and petitioner moved the court to tax the costs of them to the defendant, which the court overruled. This case was complicated, and involved lands of three different owners: *Held,* no error in overruling the motion, which was addressed to the sound discretion of the court.

Appeal from the County Court of Madison county; the Hon. C. L. Cook, Judge, presiding.

Messrs. Morrison & Whitlock, and Messrs. Dale & Bradshaw, for the appellant:

It was error to allow the witness to speak of the cost of the buildings on the land. *Railway Co.* v. *Walsh,* 106 Ill. 253.

It was error to prove the effect of the trestle-work and embankment upon the land. It did not tend to prove the market value of the land. *DeBuol* v. *Railroad Co.* 111 Ill. 499.

The court erred in allowing the challenge of the jurors. Rev. Stat. chap. 47, sec. 6; chap. 78, sec. 14.

The court erred in not limiting the costs of all the defendant's witnesses above six. Rev. Stat. chap. 33, sec. 15; *White* v. *Hermann,* 51 Ill. 243.

The jurors' fees should not have been taxed to appellant. Rev. Stat. chap. 53, sec. 44.

Mr. S. W. Metcalfe, for the appellee:

The court did not allow the witness to testify to the cost of the buildings, but the testimony was to show the value of the land.

If the effect of the proposed improvement was to flood the land, that was proper to be shown on question of damages.

Damages from the farm lying open for six months after the road is used, are proper. *Railroad Co.* v. *Jacobs*, 110 Ill. 414; *Dupuis* v. *Railroad Co.* 115 id. 97.

If property has a special value from any cause, that value belongs to the owner, and he is entitled to compensation for it. *Johnson* v. *Railroad Co.* 111 Ill. 413.

The challenge of the jurors was properly allowed, and the ruling as to costs was warranted.

Mr. Justice Magruder delivered the opinion of the Court:

The appellant herein filed its petition, on October 23, 1889, in the County Court of Madison County, in vacation, seeking to condemn the right of way for its line of railroad through said county. The county judge endorsed upon the petition an order fixing a day for the hearing, and the clerk proceeded to draw a jury under the statute. Appellee, defendant below, filed his cross-petition, claiming damages to contiguous lands not taken. This case and two others were heard together by consent, and separate verdicts were rendered. In the present case, the verdict was $268.50 as compensation for the land taken, being 3.58 acres, and $1000.00 as damages to the lands not taken, amounting, in all, to $1268.50. Motion for new trial was overruled and judgment rendered upon the verdict. Such judgment is now brought here for review by appeal.

It is objected, that two witnesses, Eaton and Judy, were allowed to testify as to the cost of improvements upon the portion of the farm not taken for right of way. Counsel are mistaken in saying that the testimony is as to the *cost*. The witnesses merely stated how much the improvements were *worth* to the land, or, in other words, the value of the land with the improvements upon it. We cannot say that the statements thus made were improper, or worked any injury to

the petitioner, when considered in connection with the rest of the testimony. Where certain evidence shows the value of the land not taken with the improvements thereon, as such value is before the construction of the road, and other evidence shows the reduced value thereof as it will be after the construction of the road, the jury are enabled to determine the extent of the depreciation, and, consequently, the amount of damages caused by the improvement. The point decided in *J. & S. E. Ry. Co.* v. *Walsh*, 106 Ill. 253, that the cost of the improvements is not a true test of the value of the premises, does not arise in this case.

It is objected that one of the witnesses was asked and allowed to answer the following question: "what would be the damage from having that pasture there open for six months by the railroad taking possession of the tract of land—by it being unfenced?" The question was proper in view of the ruling of this Court in *St. L. J. & S. R. R. Co.* v. *Kirby*, 104 Ill. 345, where it was held, that, under the law, the railroad company is not bound to fence its road until six months after it is completed, and that "the inconvenience of having a man's land temporarily thrown open in the progress of the construction of the road, may be a material element, and justly require compensation." To the same effect is *C. & C. R. R. Co.* v. *Brake*, 125 Ill. 393.

In connection with this subject the appellant criticizes the second instruction given for the defendant below, which told the jury that defendant was "entitled to recover all the damages that the evidence shows he will sustain by reason of his land being so thrown open and for six months after said railroad is open to use." The said second instruction is not objectionable under the doctrine of the *Brake* case, and when read in connection with instructions given for the petitioner, which told the jury "that the damages, contemplated in law, to be paid for injury to contiguous land not taken, are such and such only as are the direct result of the taking of the right

of way; that such damages, to be legitimately allowed, must be direct and proximate, and not remote and possible only; that * * * the inconvenience of using the lands not taken, resulting from the opening of the right of way up to the time the law requires the railroad company to fence its track, is proper to be taken into account in estimating for damages to contiguous lands not taken."

It appeared from the evidence that the land of appellee, through which appellant sought to condemn the right of way, was a dairy and stock farm and valuable for the purposes of grazing and pasturage, and that its value for such purposes would be diminished if it was allowed to remain open and unfenced for six months after the completion of the road. We see no objection to this evidence under the decisions of this court. (*Johnson* v. *F. & M. R. Ry. Co.* 111 Ill. 413; *DeBuol* v. *F. & M. R. Ry. Co.* 111 id. 499; *C. & E. R. R. Co.* v. *Jacobs,* 110 id. 414; *Dupuis* v. *C. & N. W. Ry. Co.* 115 id. 97; *C. B. & N. R. R. Co.* v. *Bowman,* 122 id. 595; *C. & C. R. R. Co.* v. *Brake, supra.*) We find nothing in the evidence or the instructions, from which the jury could be authorized to allow damages for loss of business or profits. The Court correctly instructed the jury, that, if the lands not taken were depreciated in value by the construction and operation of the railroad, the measure of damages would be the difference in their market value before the construction of the road and after its construction, and that all the matters and circumstances, which were brought to their attention by the testimony, should only be taken into consideration in so far as they aided in determining the amount of such difference. It is true, as stated by counsel, that it was held in the *Brake* case to be incompetent and improper for the jury "to enter upon conjecture as to the probably injury to stock, or the damages that might result therefrom." But, here, they were especially cautioned against indulging in any such conjecture by an instruction given for the petitioner, which told them that they were not

authorized "to allow anything by their verdict by reason of any supposed damage to stock from the use of said right of way for railroad purposes," and that "the law considered the probable damage to stock as too remote and speculative to be considered in estimating the just compensation to be paid for such right of way."

A witness was asked what effect a trestle-work and embankment upon the right of way across the defendant's farm would have "in regard to flooding the rest of his land?" If we understand the objection made by appellant's counsel to this question, it is the assumption, alleged to be contained in the question, that the company will depart from its plans and specifications. But we do not think that such a construction can be fairly placed upon the interrogatory. The engineer of the company testified that, according to the profile and survey introduced in evidence, a trestle 128 feet long and 20 feet high would be constructed, and that dirt would be used to make a bank "on the clover patch." If the effect of such trestle and embankment would be to flood a portion of the land, such flooding would be a proper element of damage to be considered by the jury. The reply of the witness to the question could not have injured the company, as he answered that he had had no experience in such matters and could not tell how much flooding would be caused by the embankment if there was one, though he thought that "it would flood some."

Two persons, called as jurors and examined and accepted by the petitioner, were challenged by the defendant, on the ground that each of them had served as a juror on the trial of a cause in a court of record in said county of Madison within one year previous to the time of his being offered as a juror. The County judge sustained these challenges, and his action in this regard is now urged as error by the appellant. The alleged ground of error is that a challenge of a juror for previous service on a jury within a year can only be sustained where such juror is "not one of the regular panel," and that

the offered jurors in the present case were of the regular panel because they were drawn in accordance with the provisions of section 6 of the Eminent Domain Act. (Rev. Stat. chap. 47, sec. 6.)

The latter section provides, that, "in cases fixed for hearing of petition in vacation," the clerk shall write the names of 64 disinterested freeholders of the county on 64 slips of paper, and, in presence of two disinterested freeholders, cause to be selected from said names twelve persons to act as jurors, who shall thereupon be summoned to appear at a time to be named in the *venire,* etc. Section 7 of the Eminent Domain Act provides, that "the petitioner, and every party interested in the ascertaining of compensation, shall have the same right of challenge of jurors as in other civil cases in the circuit courts." Turning to section 14 of the "Act concerning jurors" etc., (Rev. Stat. chap. 78, sec. 14,) we find that "it shall be sufficient cause of challenge of a petit juror, * * * if he is not one of the regular panel, that he has served as a juror on the trial of a cause in any court of record in the county within one year previous to the time of his being offered as a juror." What "regular panel" is here meant? The regular panel selected and constituted in accordance with the provisions of said "Act concerning Jurors" etc. It is very clear that the jurors, selected in vacation in the mode specified under section 6 of the Eminent Domain Act, do not belong to the "regular panel" mentioned in section 14 of the "Act concerning Jurors" etc., and, therefore, as to them, previous service on a jury within a year is a good cause of challenge. If this be not so, then section 7 of the Eminent Domain Act does not confer "the same right of challenge of jurors as in other civil cases in the circuit courts." The Act in regard to County Courts provides that "unless the court shall otherwise order, the jury for the law terms of the county court shall be drawn and summoned in the same manner as is provided for the drawing and summoning juries for the terms of the Circuit court." (Rev. Stat.

chap. 37, sec. 110.) We are, therefore, of the opinion that the court below committed no error in sustaining the challenges in question.

After the defendant had examined six witnesses, the petitioner gave notice that it would move to have the costs of such other witnesses, as the defendant might examine, taxed against the defendant; and, defendant having thereafter examined nine additional witnesses, the petitioner made a motion to tax the costs of these nine witnesses against the defendant. This motion was overruled and exception taken. The appellant claims that the overruling of this motion was error, but we do not think the claim is well-founded. Under section 15 of the Act in relation to Costs (Rev. Stat. chap. 33, sec. 15) the allowance or disallowance of the motion rested in the sound discretion of the trial judge. (*C. B. & N. R. R. Co.* v. *Bowman et al.* 122 Ill. 595.) We cannot see that the discretion was abused. Three cases were tried together, and the same testimony seems to have been used in all of them. The facts were complicated, and the ascertainment of the value of the land taken, and of damages to the land not taken, involved an inquiry into a number of distinct elements both of value and damage. In the *Bowman* case, *supra,* it was held that it was no abuse of the trial court's discretion to allow twenty-one witnesses to be examined.

The appellant further assigns as error that the fees of the jurors were taxed as costs against the petitioner below, whereas it is claimed that such fees were properly chargeable against the county of Madison. We think that this point is well taken. The fees of the jurors should not have been taxed against the petitioner. We think that section 44 of the Act in relation to fees and salaries (Rev. Stat. chap. 53, sec. 44) and section 110 of the County Court Act (Rev. Stat. chap. 37, sec. 110) can be fairly construed to authorize such fees to be paid out of the county treasury. The services of jurors in attending courts of record are to be paid out of the county treasury.

The County Court is a court of record. The words "including the county court when sitting for or doing probate business," as they occur in said section 44, do not necessarily exclude county courts when not sitting for probate business, if their business is such as to require the services of jurors.

The judgment of the county court is affirmed in all things except so far as it authorizes the fees of the jurors to be taxed against the petitioner below. In the latter particular it is reversed, and the cause is hereby remanded to that court with directions to change its order in regard to the fees of the jurors in accordance with the views here expressed.

*Judgment reversed in part and in part affirmed.*