FIVE TRACTS OF LAND IN CUMBERLAND TP., ADAMS CO., PA., v.
UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   April 25, 1900.)

No. 32.

1. EMINENT DOMAIN—MEASURE OF COMPENSATION FOR PROPERTY TAKEN—
MARKET VALUE.
    In estimating the compensation to which a landowner is entitled on
    the taking of his property for a public use, the adaptability of the prop-
    erty in its present state and surroundings for other and more valuable
    purposes than those to which it has been put is a proper element to be
    considered in determining its market value; but its possible value under
    circumstances and conditions which do not exist, but which the owner
    may intend to create, cannot be considered.

2. SAME.
    In proceedings by the United States for the condemnation, for the pur-
    pose of a national park, of land which formed a part of a battlefield, the
    measure of compensation to which the owner is entitled is the market
    value of the land, and, if such value is enhanced by its historical asso-
    ciations, such fact is a proper element to be considered; but the fact
    that the land is desired by the United States for a particular purpose is
    not an element of market value, and evidence of prices paid for land on
    other battlefields, purchased for similar purposes, is inadmissible to fur-
    nish a basis of comparison by which to establish the market value of
    that in question.

In Error to the Circuit Court of the United States for the East-
ern District of Pennsylvania.

William McClean and Wm. Arck McClean, for plaintiff in error.
James M. Beck, for the United States.

Before ACHESON and GRAY, Circuit Judges, and KIRKPAT-
RICK, District Judge.

GRAY, Circuit Judge.   The United States presented its petition
to the judges of the circuit court of the United States for the East-
ern district of Pennsylvania, setting out the act of congress of Au-
gust 1, 1888, entitled "An act to authorize condemnation of land for
sites of public buildings and other purposes," the act of general as-
sembly of the state of Pennsylvania approved June 8, 1874, entitled
"An act providing a mode by which the title to all estates and in-
terests in land in the state of Pennsylvania may be vested in the
United States when no agreement can be made with the owners of
the same for the purchase thereof," and the act of congress ap-
proved February 11, 1895, entitled "An act to establish a national
military park at Gettysburg, Pennsylvania," and describing five
certain tracts of land in Cumberland township, Adams county, Pa.,
the title to which it was necessary that the United States acquire,
in order to carry out the purpose of said last-mentioned act of con-
gress; that the five tracts of land are contained in map prepared by
Maj. Gen. Daniel E. Sickles, United States army, of the battlefield
of Gettysburg, and were occupied by the infantry, cavalry, and ar-
tillery on the 1st, 2d, and 3d days of July, A. D. 1863, and praying
for the appointment of a jury to view, estimate, and determine the
value of the said lands.

The act of congress of August 1, 1888 (section 2), above referred to, provides that:

"The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record in the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding."

The act of the general assembly of the state of Pennsylvania of June 8, 1874, above referred to, provides that, when it shall happen that the United States cannot agree with the owner or owners thereof for the purchase of lands proposed to be taken as part of the premises which the United States are or may be authorized to acquire in said commonwealth for any public use or purpose, a petition may be filed in the court of common pleas of the county, in behalf of the United States, and after notice to owners, etc., the said court is authorized to appoint seven freeholders, who, upon due qualification and giving due notice, shall estimate and determine the fair value of the estates or interest in lands so proposed to be taken for the use of the United States, shall designate the several owners thereof, and shall report the same to the said court; and their award is made subject to appeal. After the passage of the act of congress of February 11, 1895, entitled "An act to establish a national military park, at Gettysburg, Pennsylvania," James M. Beck, Esq., district attorney of the United States, in behalf of the United States, and pursuant to the act of congress of August 1, 1888, above referred to, made application to the circuit court of the United States for the Eastern district of Pennsylvania, conforming in said application, and in the proceedings pursuant thereto, as near as possible, to the requirements of the act of the general assembly of the state of Pennsylvania of June 8, 1874. The jury of viewers appointed by the said court met for the discharge of their duties, and filed their report in the said court. The landowners appealed from the report of the said jury of viewers, and their appeal came on for trial in the circuit court of the United States, before his honor, George M. Dallas, at the October term of said court, 1898. In the course of the trial in the circuit court the landowners called as a witness Gen. H. V. Boynton. Counsel for the government requested that it should be stated what was proposed to be proved by Gen. Boynton. Counsel for the landowners stated that he would make the offer, if it was understood that it would be with the same force and effect as if the witness had been sworn.

"The Court: There being no objection, the offer will be made as if the witness had been called and sworn, and will be so treated."

Counsel for the landowners then made the offer as follows:

"The owners of these tracts of land propose to show that the witness who has been called was a distinguished officer in the service during the Civil War; that he at present is in the volunteer service, with the rank of brigadier general, located at Chickamauga; that for a number of years he served as clerk to the Chickamauga commission and the Chattanooga commission, and was interested in the acquisition of the lands which have been acquired by the government on the field of Chickamauga and at Chattanooga Park; that after serving as clerk to this commission for a period of

five years, during which time the Chickamauga and Chattanooga enterprise began, and through which it was continued, he was appointed chairman of the Chickamauga commission, and now holds that position; that he is thoroughly familiar with the battlefield of Gettysburg, having visited it on a number of occasions purely for the purpose of inspecting the field; that he has taken an interest in the improvement of the field of Gettysburg in connection with his official duties at Chickamauga; that he is acquainted, from actual observation of the contracts, with the prices paid by the United States for ground of a similar character at Chickamauga and at Chattanooga. We propose to offer his testimony, relying on his intimate acquaintance with the purchases there and with the field at Gettysburg, in the nature of expert testimony as to the market value of lands of a similar character to these, which we claim have a peculiar value. The Court: That is to say, to prove by a gentleman who derives his knowledge from familiarity with Chattanooga and Chickamauga, to which is superadded an occasional visit to the field of Gettysburg, what prices were paid for what he would say was similar property in this other place. Counsel for Landowners: Yes, sir; in this other place. (Objected to.) The Court: The offer which has been made, and which it has been agreed by counsel shall be treated by the court as if the witness had been called to the stand and duly sworn, is an offer to prove by an expert the value of land. The first objection to the offer that impresses the court is that it does not appear sufficiently that the gentleman called would be an expert with respect to the value of the land in question. But there is a more far-reaching question, that perhaps might as well be dealt with now as later. The court has no doubt, as at present advised,—that the present issue is to determine the market value of the land which the government proposes to take,—that into the market value there does not enter every element which contributes to constitute the market value. If the market value of the land has been enhanced by reason of its patriotic or historic associations, that is as much, in the judgment of the court, an element to be considered, as if there were an open mine upon it, or any other matter of a similar nature had contributed to increase its value. But this discrimination, as it occurs to the court, must be borne in mind: that the question still is as to market value, and not its peculiar value to the single, peculiar purchaser,—the government of the United States. Its market value cannot be increased because the United States proposes to purchase it for any one purpose or another. * * * In other words, I repeat, the market value is to be ascertained, and, no matter what may be the thing which enhances or diminishes market value, the jury are entitled to have it and consider it, but they are not entitled to consider this property as being of increased value because the United States is purchaser for a purpose. The offer is therefore overruled. (Exception noted in each case for the landowners.)"

It does not appear that Gen. Boynton was a resident of the county where the lands lie, or even a citizen of the state of Pennsylvania, and he did not profess to have knowledge of the market value of the lands in question, except as above stated, all of which is true in regard to the next witness offered by counsel for plaintiff in error, as follows:

"We offer General Ezra A. Carman, a member of the Antietam battlefield commission, who is at present in charge of the work of that commission, and who fought at the battle of Gettysburg, who is thoroughly familiar with the field, who has visited the field a number of times since the war, and who conducted the business of purchasing land on the battlefield of Antietam for the government, for the purpose of showing prices paid by the United States for lands of a character similar to these about to be taken, although on a different field, for the same purpose as stated in my preceding offer of General Boynton. (Objected to.) The Court: It is difficult to distinguish this offer, in principle, from the one ruled upon. Therefore, for the same reasons, this offer is rejected. (Exceptions noted in each case for the landowners.)"

The landowners then called as a witness J. Emory Bair, and an offer was made to prove by the witness the organization of the Gettysburg Springs & Hotel Company, the owner of tracts 1 and 2; acts already done by the said company in the development of their property; the intended uses of the land bought by the said company, including uses to be made of the land sought to be condemned, which would show the relation of said five tracts to the other land of the company; and the interference with the work of the company by the United States and its representatives,—that all these facts were admissible, not only as parts of the res gestæ, and to show the actual state of the matter, for the consideration of the jury, but also as an element in determining the damages to the landowners. The court rejected the testimony, and noted an exception for the landowners. The landowners filed bill of exceptions to the action of the court in the rejection of the testimony of the three witnesses as offered, and afterwards assigned for error such rulings of the learned court below. The grounds of their exceptions are, in substance, as follows: (1) The rejection of the offer to prove by Gen. H. V. Boynton the value of the lands in question; (2) the rejection of the offer to prove by Ezra A. Carman the value of the lands in question; (3) the rejection of the offer to prove by J. Emory Bair acts already done by the Gettysburg Springs & Hotel Company, and the intended uses of the lands (Nos. 1 and 2) bought by said company. The first two grounds of exception are precisely similar.

The court, in its charge to the jury, which we think was exceedingly fair to both sides of the controversy, stated with accuracy and fully the rules by which they were to ascertain the value of the lands in question. Among other things, the court said:

"Market value is not to be determined by what a property would bring at an enforced sale, where the owner was compelled to part with it, without consideration as to whether anybody desired to purchase it or not. That would not make a market, and therefore the resulting price would not be a market price. What the owner is entitled to receive at your hands in each of these cases is the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiation, where the seller is willing to sell, and the buyer desires to buy. * * * As to availability for building lots, permit me to say this for your guidance: That present existing adaptability to purposes more advantageous than those to which the land is now put may be considered. By that the court means that you are not compelled, because land is now, for instance, used only for agricultural purposes, to exclude entirely from your consideration any present, existing adaptability which it may have for a more profitable purpose. But in all cases this value must be actual, not speculative merely. The land is not to be valued as if the possible were in existence, but at its present worth in view of the possibility."

After considering the case where it is not proposed to buy all of the land in the tract, a part of which is proposed to be condemned, and laying down the correct rule for ascertaining, not only the value of the part taken, but any damage that may result from the taking to the part left, the court proceeds to the discussion of another phase of the question to be considered by the jury, and says:

"Upon these subjects, however, while they will not, perhaps, be free from difficulty, you will, I assume, have less difficulty than upon the remaining element of value which is insisted upon, namely, that which has been spoken

of as 'historic value.' There is no doubt that historic association may enter into the market value of the land, but you are not to give, as separate items— First, market value; and, second, historic value. If you did that, you would depart from what I have said to you the law has established as the measure of just compensation, which is market value. But, as I said to counsel during the course of the cause, if a piece of land has in the market a value because there are trees upon it, a value because there are stones upon it, a value because it may be used to raise cereals, a value for any other physical peculiarity of the property, if it also has in the market a value based upon its historical associations, that as much enters into market value as would a mine opened upon the property, or a well dug upon it. It is a part of the different matters that go to contribute to the sum total of market value. Just in that way you are entitled to consider historic value, if you believe from the evidence that market value is at all enhanced by historical value. * * * Nor, keeping your minds always to market value, are you to consider the valuation with reference to the necessities of the government of the United States to take the property, or the particular purposes to which the United States government proposes to put it. * * * You are getting at the market value. Therefore observe, not what the United States might be willing to pay in order to carry out the purpose which it has in view,— that is not the question,—but what in the market would any purchaser desiring to buy this property be willing to give for it, considering all the elements that have been stated, in order to acquire it from a seller willing to sell."

In the passages quoted, we think the learned judge in the court below has clearly and correctly stated the rules of law which should govern a jury in the ascertainment of the value of the land proposed to be taken by the United States, and the damages resulting therefrom. We are also of opinion that the proffers of testimony, above stated, and which were rejected by the court and made the causes of exception, were properly rejected, for the reasons given. We therefore feel that it is only necessary to refer to these rulings, and the reasons given therefor, as well as to the charge of the court to the jury, as in accord with our own judgment, and as a sufficient statement of the reasons controlling this court in affirming the judgment of the court below. The judgment in this case is hereby affirmed.