## UNITED STATES v. HONOLULU PLANTATION CO.

(Circuit Court of Appeals, Ninth Circuit.  May 4, 1903.)

No. 896.

1. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—EVIDENCE OF VALUE.

In proceedings under the right of eminent domain to condemn a portion of a tract of land, the taking of which did not affect the value of the remainder, evidence is inadmissible to show the value or extent of improvements upon the remaining portion of the tract.

2. REVIEW ON ERROR—ERRONEOUS ADMISSION OF MATERIAL EVIDENCE.

The erroneous admission of material evidence before a jury constitutes reversible error, unless it clearly appears that it was without injury to the opposing party.

3. EMINENT DOMAIN—MEASURE OF COMPENSATION.

The compensation to be made for land taken for public use in the exercise of the right of eminent domain is measured by its market value at the time of the taking, and evidence is inadmissible to show that it has a peculiar and enhanced value to the defendant.

4. SAME—PROCEDURE—LAWS OF HAWAII.

In proceedings by the United States to condemn land in the territory of Hawaii for public use, in the exercise of the power of eminent domain, the issue of fact as to the value of the land is triable by jury.

In Error to the District Court of the United States for the District of Hawaii.

J. J. Dunne, U. S. Atty.

Hatch & Silliman, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the United States to condemn 561.2 acres of land bordering on Pearl Harbor, Hawaii, on which to establish a naval station. The fee of the land having been acquired by the government, the only question presented for trial in the court below was the amount of compensation to be made by the government for two certain leasehold interests in the land sought to be taken, held by the defendant Honolulu Plantation Company. One of those leases expires by its terms in the year 1908, and the other then commences and continues for a long period. The 561.2 acres sought to be condemned comprise a part of the 8,000 acres composing the plantation of the defendant Honolulu Company, but have never been cropped. The evidence shows that the larger part of the tract in question has been cleared of brush and rocks and plowed. The testimony of the company's manager, Mr. Low, is to the effect that about 342 acres of the 561.2 acres are valuable for the

¶ 3. See Eminent Domain, vol. 18, Cent. Dig. §§ 353, 356.

growing of sugar cane, but that the remainder is too rocky and hilly for that purpose. His estimate of the value of the leasehold interest in the 561.2 acres, however, runs into the hundreds of thousands of dollars, as does that of a number of other witnesses on behalf of the defendant plantation company, while the testimony on the part of the government tends to show that its value does not much exceed $20,000. The sole issue presented and tried in the court below was as to the value of the defendant Honolulu Plantation Company's interest in the tract sought to be taken, and upon that issue there were two trials, in each instance with a jury. The first trial resulted in a verdict fixing the value of the company's interest at $105,000, and on the government's motion for a new trial the court below held that the verdict was excessive, and that unless the defendant company remitted all in excess of $75,000 a new trial would be granted. This the company refused to do, so a new trial was awarded, was thereafter had, and resulted in a verdict fixing the value of the' leasehold interest in question at $102,523. This the court below still regarded as excessive, as shown by its opinion, but regarded the two verdicts as substantially the same, and the case as one proper for the application of the rule at times applied to concurrent verdicts. It therefore refused another trial, and adjudged the payment of the amount fixed by the jury as a condition to the taking of the defendant's interest by the plaintiff. The case was then brought here by the plaintiff.

It appears from the record that the Honolulu Plantation Company was organized in 1898, and has since been extensively engaged in growing cane and making sugar upon its plantation, embracing, as has been said, about 8,000 acres of land. To that part of it involved in this action it has never extended its operations further than to clear about 342 acres of it of brush and rocks, and plow the same, planting only a small patch in cane. From no part of the tract in question has it ever received any income, but, on the contrary, that tract has been, according to the undisputed evidence of its manager, a source of expense. That portion of the plantation in which the company's sugar mill and water plant are located, called 'the Halawa Valley, is, at its nearest point, from one and a quarter to one and a half miles from the tract sought to be condemned, and it is not contended that the taking of the latter would injure or in any respect lessen the value of the remaining lands or property of the company. But, as bearing on the question of the value of the 561.2 acres sought to be condemned, the defendant company was permitted to show, against the objections and exceptions of the plaintiff, not only the fact that it had in the Halawa Valley a mill in which such cane as might be grown on the tract in question could be ground, and a pumping plant from which such tract might be supplied with water, but the size and capacity of such mill and pumping plant; it being shown that the pumping plant has a daily capacity of 17,000,000 of gallons of water, and that the mill is a large one. It is said by the defendant in error, and truly, that the plaintiff introduced testimony to the effect that upon the tract sought to be condemned there was no water except one small artesian well of brackish water, and that

it was entitled to show on cross-examination of such witnesses that the company had on another portion of its plantation water available for and capable of supplying the tract in question. This, we think, is quite true; but we can see no justification for the ruling permitting the defendant company to go into the question of the maximum capacity of such pumping plant or the size of its sugar mill. Those matters had no proper connection with the value of the land the government sought to take; and yet the direct tendency of the coupling of such heavy expenditures by the company upon its plantation with the question of value of the 561.2 acres in question may very readily. have been to enhance the latter in the minds of the jury. Material evidence erroneously admitted in a trial before a jury is always reversible error, unless it can be properly said that such admission was, without doubt, without injury. Mexia v. Oliver, 148 U. S. 664, 13 Sup. Ct. 754, 37 L. Ed. 602; Boston & Albany R. R. Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830, 39 L. Ed. 1006; V. & M. R. R. Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 172, 30 L. Ed. 299; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; National M. Association v. Shryock, 20 C. C. A. 3, 73 Fed. 774; St. Louis, etc., Ry. Co. v. Needham, 11 C. C. A. 56, 63 Fed. 107, 25 L. R. A. 833.

But a still more pronounced error was committed on the trial in the court below in permitting, over the objections and exceptions of the plaintiff, testimony as to the value of the tract sought to be taken to the defendant, Honolulu Plantation Company. It was contended on behalf of that company that the tract in question was especially valuable to it, and several witnesses were permitted to testify, against the objections and exceptions of the plaintiff, to the value of the tract sought to be taken to that particular company. Thus, the latter was permitted to ask its witness Bolte this question:

"Q. Now, considering the property sought to be condemned in the state in which you saw it on the day that you viewed it, that it is in substantially the same state on the 6th of July, 1901, considering its situation and the uses that may be made of it and to which it was adapted, and assuming that the plantation has thirty-nine years' lease, seven years' rental of which has been paid, and the remaining thirty-two years as upon the basis of a crop payment—that is, three and one-half per cent. of the sugar produced and the payment of the taxes—the lease including other land, the minimum rent upon the other land which is not material, and assuming that there are 342 acres of cane land in the area sought to be condemned, what, in your opinion, was the value of the leasehold interests of that land on the 6th day of July, 1901, of the Honolulu Plantation Company? A. Four hundred and fifty thousand dollars. Q. What was its market value? Mr. Dunne: I move to strike out the testimony of this witness as to the value of this leasehold to the Honolulu Plantation Company, on the ground that it is settled law that what this may be worth to the Honolulu Plantation Company is not a fair test of the market value. The Court: The court will not strike it out. Mr. Dunne: I refer to your honor's ruling on the former trial. The Court: I didn't rule it out. Mr. Dunne: We except. Mr. Silliman (to the Witness): What was the market value? A. That is what I said, I have not made up my mind. I think it ought to be two hundred and fifty or three hundred thousand dollars. The Court: Is there any difference between the value and the market value? A. Yes, sir; the Honolulu Plantation— It would have a greater value to the Honolulu Plantation than to any one else. If it was put in the market there would be three buyers for this land—the Ewa, the Oahu, and the Honolulu. But it has a distinct value to the Honolulu Plantation."

Cross-examination of C. Bolte:

"Mr. Dunne (to the Court): To save the rights of the government, I move to strike out the testimony of the witness relative to the value of this lease-hold to a particular individual—to the Honolulu Plantation Company—on the ground that it is—the compensation in (is)—market value, and not the value which the property might or might not have to a particular individual. The Court: The Court will not strike it out. Mr. Dunne: We except."

So, too, Mr. Low, the manager of the defendant company, was questioned by its counsel as follows:

"Q. Mr. Low, what is the value of the property sought to be condemned to the Honolulu Plantation Company? Mr. Dunne: I object to the question upon two grounds: First, on the ground that it does not seek to bring forth market value; and upon the ground, second, that it seeks to limit the value therein spoken of to an individual, to wit, the Honolulu Plantation Company, as distinguished from the market value. The Court: Let him answer the question. A. Four hundred thousand dollars. Mr. Silliman: What was its value on the 6th of July, 1901? A. To the Honolulu Plantation Company? Q. Yes. Mr. Dunne: The same objection. The Court: The same ruling. Mr. Dunne: We except; and said plaintiff and petitioner now assigns said ruling as error. A. Four hundred thousand dollars."

There was similar testimony given by other witnesses, under similar objections, rulings, and exceptions.

There is nothing justifying those rulings in the case of Monongahela Navigation Company v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463. There the property taken was of a peculiar and distinct character, and the court itself expressly declared that what was there said did not apply to cases like the present, where only a portion of a larger tract of land is sought to be taken; the court saying, at page 326, 148 U. S., page 626, 13 Sup. Ct., 37 L. Ed. 463:

"We do not in this refer to the case where only a portion of a tract is taken, or express any opinion on the vexed question as to the extent to which the benefits or injuries to the portion not taken may be brought into consideration. This is a question which may arise possibly in this case, if the seven locks and dams belonging to the navigation company are so situated as to be fairly considered one property—a matter in respect to which the record before us furnishes no positive evidence. It seems to be assumed that each lock and dam by itself constitutes a separate structure and separate property, and the thoughts we have suggested are pertinent to such a case."

Compensation to be made for property taken by the exercise of the power of eminent domain is not its value to any particular company or individual, whether plaintiff, defendant, or anybody else, but the market value of such property at the time of the exercise of the power.

"The inquiry in such cases," said the Supreme Court in Boom Company v. Patterson, 98 U. S. 403, 408, 25 L. Ed. 206, "must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated."

That the tract in question here had a market value is distinctly declared by the defendant company's manager in his testimony above quoted, where he testified:

"It would have a greater value to the Honolulu Plantation than to anyone else. If it was put in the market there would be three buyers for this land—the Ewa, the Oahu, and the Honolulu. But it has a distinct value to the Honolulu Plantation."

That the compensation to be made for land taken by the exercise of the power of eminent domain must be measured, not by its value to any particular person, but by the market value of the land at the time of the taking, is established by many authorities, a few of which we add: Five Tracts of Land v. United States, 41 C. C. A. 580, 101 Fed. 661; S. D. L. Co. v. Neale, 78 Cal. 67, 20 Pac. 372, 3 L. R. A. 83; Moulton v. N. Water Co., 137 Mass. 167; Lawrence v. Boston, 119 Mass. 126; Stinson v. Railway Co., 27 Minn. 284, 6 N. W. 784; R. R. Co. v. Worcester, 155 Mass. 35, 29 N. E. 56; Randolph, Eminent Domain, § 234; 2 Lewis, Eminent Domain, § 478; Brown v. R. R. Co., 125 Ill. 600, 18 N. E. 283; Shano v. Bridge Company, 189 Pa. 245, 42 Atl. 128, 69 Am. St. Rep. 808; R. R. Company v. Eaton, 136 Ill. 9, 26 N. E. 575; Munkwitz v. R. R. Co., 64 Wis. 403, 25 N. W. 438; R. R. Company v. Ruby, 80 Tex. 172, 15 S. W. 1040; R. R. Co. v. Todd, 39 Neb. 818, 58 N. W. 289; In re R. R. Co., 98 N. Y. 447; In re Furman St., 17 Wend. 649, 670, 671, where Judge Bronson said:

"However much the necessity of disarranging the plans of any individual may be regretted, the great principle upon which public improvements are to be effected must be substantially the same in all cases. All classes and conditions of men hold their property subject to the paramount claims of the state; and when it is taken for public purposes, and the question of compensation is presented, the only proper inquiry is, what is its value? The question is not, what estimate does the owner place upon it, but what is its real worth, in the judgment of honest, competent, and disinterested men? The use to which the owner has applied his property is of no importance beyond its influence upon the present value. If highly cultivated, it will be worth more than if suffered to run to waste. * * * What price will it bring in the market? That is the proper inquiry in a proceeding of this kind. As between individuals the owner may demand any price, however exorbitant, for his property; but when it is taken for public purposes he can only demand its real value. That value cannot depend in any degree on his own will. To allow either his judgment or his fancy, in relation to the proper use of the property, to influence the question, would be to make the estate either more or less valuable, as it might happen to be possessed by one individual or another."

As the judgment must be reversed, and a new trial ordered, it is proper to pass upon the point urged on behalf of the plaintiff in error, to the effect that in such a case as the present, originating in the territory of Hawaii, a jury trial cannot be legally had. It is conceded that the Constitution of the United States neither requires nor forbids a trial by jury of the question of the amount of compensation for property taken for public use under the right of eminent domain; that being, as held by the Supreme Court, a mere matter of procedure. "All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation; and when this has been provided

for there is that due process of law which is required by the federal Constitution." Backus v. Fort Street Company, 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853; Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270.

Congress, in the exercise of its undoubted power, passed an act approved August 1, 1888, 25 Stat. 357, c. 728 [U. S. Comp. St. 1901, p. 2516], enacting that:

"In every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building, or for other public uses, he shall be, and hereby is, authorized to acquire the same for the United States by condemnation under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so. And the United States Circuit or District Courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury under this act, or such other officer, to cause proceedings to be commenced for condemnation within thirty days from the receipt of the application at the Department of Justice."

By section 2 of the act it is provided that:

"The practice, pleadings, forms, and modes of proceeding in cases arising under the provisions of this act, shall conform, as near as may be, to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding."

There is a corresponding provision of the Revised Statutes, § 914 [U. S. Comp. St. 1901, p. 684], reading as follows:

"The practice, pleadings, forms, and modes of proceeding in civil causes other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, forms, and modes of proceeding existing at the time in like causes in the courts of record of the state within which said Circuit or District Courts are held, any rule of court to the contrary notwithstanding."

The general rule, as expressed in the Revised Statutes (Rev. St. §§ 566, 648 [U. S. Comp. St. 1901, pp. 461, 525]), is that the trial of issues of fact in actions at law, both in the District Court and in the Circuit Court, "shall be by jury"; by which, said the Supreme Court in Chappell v. United States, 160 U. S. 513, 16 Sup. Ct. 402, 40 L. Ed. 510, "is evidently meant a trial by an ordinary jury at the bar of the court. Congress has not itself provided any peculiar mode of trial in proceedings for the condemnation of lands for public uses. The direction in Act Aug. 1, 1888, c. 728, § 2, 25 Stat. 357 [U. S. Comp. St. 1901, p. 2517], that such proceedings shall conform 'as near as may be' to those 'in the courts of record of the state,' is not to be construed as creating an exception to the general rule of trial by an ordinary jury in a court of record, and as requiring, by way either of preliminary, or of substitute, a trial by a different jury, not in a court of record, nor in the presence of any judge. Such a construction would unnecessarily and unwisely incumber the administration of justice in the courts of the United States." Moreover, we do not find the Hawaiian statutes to be as claimed on the part of counsel for plaintiff. The first, fifth, and sixth sections of

the act of Congress of April 30, 1900, 31 Stat. 141, 142, c. 339, to provide a government for the territory of Hawaii, are as follows:

"Section 1. That the phrase 'laws of Hawaii,' as used in this act without qualifying words, shall mean the Constitution and laws of the Republic of Hawaii in force on the twelfth day of August, eighteen·hundred and ninety-eight, at the time of the transfer of the sovereignty of the Hawaiian Islands to the United States of America. The Constitution and statute laws of the Republic of Hawaii then in force, set forth in a compilation made by Sidney M. Ballou under the authority of the Legislature, and published in two volumes, entitled 'Civil Laws' and 'Penal Laws,' respectively, and in the Session Laws of the Legislature for the session of eighteen hundred and ninety-eight, are referred to in this act as 'Civil Laws,' 'Penal Laws,' and 'Session Laws.'"

"Sec. 5. That the Constitution, and, except as herein otherwise provided, all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said territory as elsewhere in the United States: provided, that sections eighteen hundred and fifty and eighteen hundred and ninety of the Revised Statutes of the United States shall not apply to the territory of Hawaii.

"Sec. 6. That the laws of Hawaii not inconsistent with the Constitution or laws of the United States or the provisions of this act, shall continue in force, subject to repeal or amendment by the Legislature of Hawaii or the Congress of the United States."

The chapter of Ballou's Civil Laws on the subject of eminent domain—commencing with section 1542 and ending with section 1560—contains various provisions that are not inconsistent with the Constitution or any law of the United States, all of which, where applicable to the present case, are made controlling by the above-quoted provisions of the act of Congress of April 30, 1900, 31 Stat. 141, 142, c. 339. But those provisions of Ballou's Civil Laws on the subject of eminent domain, conferring on the Circuit Court of Hawaii "power to try and determine all actions arising under this act, subject only to an appeal to the Supreme Court in accordance with law" (section 1546, Ballou's Civil Laws), and the "power to determine all adverse or conflicting claims to the property sought to be condemned and to the compensation or damages to be awarded for the taking of the same" (section 1552, Id.), are inconsistent with the above-quoted provisions of the act of Congress of August 1, 1888, 25 Stat. 357, c. 728 [U. S. Comp. St. 1901, p. 2516], conferring upon the United States courts jurisdiction of actions for the condemnation of land for the use of the United States. Sections 1546 and 1552 of Ballou's Civil Laws of Hawaii are therefore inapplicable to the present case. Nor is there found in any of the provisions of those laws, on the subject of eminent domain, any provision expressly requiring actions for condemnation of land for public use to be tried without a jury, but the concluding words of the chapter on the subject are that "where not expressly provided in this act the procedure shall be the same as in other civil actions." The chapter on "Civil Procedure in Courts of Record" provides that civil actions shall be commenced by filing a sworn petition (section 1215). Section 1223 thereof provides for the appearance of the defendant, and prescribes two forms of answers, one admitting the allegations of the petition, which shall "form an issue of law to be determined by the court," and the other denying the truth of the facts stated in the petition, which shall "form an issue of fact to be determined by the jury."

The proper conclusion to be drawn from these provisions is that by the Hawaiian statute itself an issue of fact in respect to the value of land sought to be taken by the United States in the exercise of the power of eminent domain shall be tried by a jury.

The judgment is reversed, and the cause remanded to the court below for a new trial.