UNITED STATES v. FIRST NAT. BANK et al. SAME v. CARTER et al.
SAME v. FORBES et al.

(District Court, M. D. Alabama, N. D., at Montgomery. April 4, 1918.)

Nos. 2075–2077.

1. EMINENT DOMAIN ⬅130—DAMAGES—MEASURE.

Where the United States, which had taken possession of Alabama land for a military camp, thereafter began condemnation proceedings under Act July 2, 1917, c. 35, 40 Stat. 241, which makes the state laws applicable, the owners were entitled to recover as compensation the value of the property at the time of the actual taking, together with interest at the legal rate fixed by the state on the amount fixed, which should include the value of growing crops, as well as diminution in the value of other lands of the owners contiguous to those appropriated.

2. EMINENT DOMAIN ⬅122—COMPENSATION—"JUST COMPENSATION."

Under the Alabama laws (Code 1907, §§ 3866–3887), a landowner, whose property is condemned for a public purpose, is entitled only to "just compensation," which means equitable compensation, and is confined to the present value of the land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Just Compensation.]

3. EMINENT DOMAIN ⬅122—COMPENSATION—CONSTITUTIONAL GUARANTY.

Where the landowner receives fair, reasonable, adequate, and just compensation for the condemnation of his land, the constitutional guaranties are satisfied, for it is not intended that the compensation shall extend beyond the loss or injury.

4. EMINENT DOMAIN ⬅134—COMPENSATION—DAMAGES.

Where lands are condemned, the owner is entitled to compensation on the basis of the value of the land for the purposes to which it might have been applied, having regard to the existing business conditions in the community, and not simply with reference to the productiveness in the condition in which the owner saw fit to leave it.

5. EMINENT DOMAIN ⬅134—COMPENSATION—DAMAGES.

In fixing compensation for the condemnation of lands, possible, probable, or imaginary uses are not to be considered.

6. DAMAGES ⬅62(3)—DUTY TO MINIMIZE LOSS.

Where lands were condemned and growing crops destroyed, it was the duty of the owner, if he had the opportunity, to care for such perishable property and minimize the damages as far as reasonably possible.

7. EMINENT DOMAIN ⬅131, 145(1)—COMPENSATION—MEASURE OF RECOVERY.

Where the government took possession of lands for a military reservation before condemnation proceedings, enhancement in value of the remaining lands cannot be offset against the value of that taken, but the owners are not entitled to receive any increased valuation on account of improvements made or proposed to be made by the government.

8. EMINENT DOMAIN ⬅202(6)—DAMAGES—MEASURE.

In assessing damages for the condemnation of land, the commissioners may consider the value at which the owner has assessed the land for taxation; but such assessment is not conclusive.

Condemnation proceedings by the United States against the First National Bank and others, against John C. Carter and others, and against A. G. Forbes and others.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thos. D. Samford, U. S. Atty., of Opelika, Ala., Lee J. Clayton, Asst. U. S. Atty., of Eufaula, Ala., and H. J. Turney, Judge Advocate, of Cleveland, Ohio, for the United States.

Steiner, Crum & Weil, of Montgomery, Ala., for defendant First Nat. Bank.

Fred S. Ball, of Montgomery, Ala., for defendant Forbes.

C. P. McIntyre, of Montgomery, Ala., for defendant Carter.

Instructions by HENRY D. CLAYTON, District Judge, to commissioners appointed to assess damages sustained by the owners:

Gentlemen: At the inception of the matters before you, I explained to you the nature of the proceedings under and by virtue of which you were appointed by the court as commissioners, and your duties in respect thereto. I again call your attention to the statutes governing in this case. The act of Congress approved July 2, 1917 (40 Stat. 241, c. 35 [U. S. Comp. Stat. Supp. 1917, p. 363]), provides that the Secretary of War may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof, or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, and military training camps, such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted. The Alabama statutes (Code of Alabama 1907, §§ 3860-3887, both inclusive) provide the method of condemnation to be followed—the application for condemnation, the appointment of commissioners to assess the damages, the taking of testimony, and the like.

You will remember that I also instructed you to receive all legal testimony which might be offered to you by the defendants, as well as by the government, touching the value of the lands sought to be condemned, and the damages or injuries which have been sustained by the defendants in consequence of the taking and occupation of the lands, and other property thereon, for the establishment by the United States of a cantonment or military camp built on these lands; and I am informed that you have received and heard at length testimony, both oral and documentary, in regard to the value of the property taken and occupied by the government from the defendants, and the injuries sustained by the owners, these defendants.

For convenience, and by consent of all the parties, the cases of each of the three several owners of the land have been submitted to you together, and, of course, the law governing the measure of damages, as well as the rules relating to the admission and hearing of testimony, are applicable in each case which you have under consideration. You will weigh and consider the evidence in each case separately, in the light of these instructions and the instructions which I shall give to you, and return a separate finding and report in each one of the three several cases.

On account of an urgent emergency, it became necessary for the government to take possession of the lands involved in these proceed-

ings some months before the application for their condemnation was made to this court. It is hardly necessary to say that the government did no wrong in the occupation of these lands, for you, as intelligent and patriotic American citizens, know full well the causes which led up to the imperious necessity that impelled the government to take possession of, occupy, and use the lands involved in this condemnation.[1]

[1] The sole question for you to determine, in each one of the cases, is the value of the lands and the property at the time of the actual taking and occupation by the United States, together with interest at the rate of 8 per centum per annum, the legal rate in Alabama, on said sums so ascertained by you, from the date of such actual taking and occupation. If you find that there were growing crops on any of the land taken, you will also determine, in such case, the values of such growing crops which were on the land at the time it was taken and occupied by the government. You may also consider in this connection the diminution in the value of any lands belonging to the owners in these proceedings which are contiguous to the lands sought to be condemned, provided there is any evidence of any diminution of the value of any contiguous lands belonging to the owners whose lands are here sought to be condemned.

[2] The rules of law governing the condemnation of lands for public purposes in Alabama are the rules that obtain in the cases now before you, for the act of Congress, under which these proceedings have been instituted, provides that such shall be the rules. The rule, therefore, is that in these proceedings it is only just compensation which may be awarded to the owners of the lands sought to be condemned. This includes, besides the just value of the lands which have been taken, also the injury resulting to the remaining contiguous lands of the owners.

"Just compensation" means equitable compensation; that the owner shall be saved harmless as near as may be, and shall recover the damage which he has actually sustained. It does not mean that he shall be allowed to acquire and appropriate any more money from the government than that which is necessary for fair and adequate compensation for his loss or injury.[2]

As used in this statute, providing that commissioners shall be appointed to determine the compensation and the damages which an owner of real estate may sustain by reason of his property being taken for a public use, "compensation" means an equivalent for the value of the land, and anything beyond that is more than compensation, and anything short of it is less. This equivalent is for the present value of the land at the time of the taking and occupation, and not for the future value of the land, since no human tribunal is able to determine judicially what the value of the land will be at some future time.[3]

[1] United States v. Russell, 13 Wall. 623, 40 L. Ed. 474.

[2] Lyon v. Green Bay Railroad Co., 42 Wis. 538.

[3] New Jersey Railroad Co. v. Suydam, 17 N. J. Law (2 Har.) 25, 47; Bauman v. Ross, 167 U. S. 548, 574, 17 Sup. Ct. 966, 42 L. Ed. 270.

[3] Fair, reasonable, adequate, just compensation, for the loss or injury the owner may sustain, the Constitution guarantees to the citizen whose property is taken for public uses. When this is afforded, the purposes of right and of the Constitution are satisfied. It is not intended that compensation shall extend beyond the loss or injury, including that which the landowner had not when the property was taken, but which is an incident of the appropriation, and essential to the uses for which the law confers the right of taking the property.[4]

[4] The question in these cases relates first to the value of the lands appropriated, which is to be assessed with reference to what it was worth for sale, in view of the uses to which it might have been applied, and not simply in reference to its productiveness to the owner in the condition in which he saw fit to leave it;[5] and, if less than the whole estate has been taken, then it is to be considered, further, how much the portion not taken is increased or diminished in value in consequence of the taking or appropriation.

In arriving at the value of the lands to be condemned, you will consider in these cases the injury and the damage done to the crops growing on the lands at the time of the taking and occupation by the government. You may hear and consider all evidence tending to show what such crops were, what would have been produced, had they been allowed to be matured, what would have been harvested, and the value. You may consider any evidence tending to show the value of such crops at the time of the destruction of the same, or the occupation of said lands by the government, and upon such sum as you may find to have been the value of such growing crops you may allow interest thereon from the time such lands were taken and occupied, and the rate of interest on account of crops taken or destroyed is 8 per centum per annum.

[5] In considering the measure of damages or compensation to be paid for said lands, possible, probable, or imaginary uses are not to be considered by you. Such uses would be remote and speculative.[6]

[6] In one or more of these suits, gentlemen, perhaps some question in the nature of what has been referred to as salvage has arisen.

I instruct you, as a principle of law on this subject, that where any question of damages is under consideration for the destruction of any part of any property which by its very nature is perishable, or subject to deterioration, it is peculiarly the duty of the owner, when he has the opportunity, to take care of said property, and to save all he reasonably can, to the end that the damage consequent upon its injury or destruction may be as little as possible. But you will consider all

---

4 Jones v. N. O. & S. R. R. Imp. Ass'n, 70 Ala. 227, 233; S. Ry. Co. v. Cowan, 129 Ala. 578, 29 South. 985; Justice v. N. V. R. R. Co., 87 Pa. 28; N. C. R. R. Co. v. Canton, 30 Md. 347; N. H. C. R. R. Co. v. Booraem, 28 N. J. Eq. 593; Lyon v. Green Bay & M. R. R. Co., 42 Wis. 538.

5 Jones v. N. O., etc., Ry. Co., 70 Ala. 233.

6 Ala. Cent. R. R. Co. v. Musgrove, 169 Ala. 429, 53 South. 1009; Five Tracts of Land v. United States, 101 Fed. 661, 41 C. C. A. 580; Goodwine v. Evans, 134 Ind. 262, 33 N. E. 1031; Munkwitz v. Chicago, M. & St. P. Ry. Co., 64 Wis. 403, 25 N. W. 438; Searl v. School, etc., 133 U. S. 553, 10 Sup. Ct. 374, 33 L. Ed. 740.

the evidence in the particular case bearing on the point, and weigh it, and consider it together with all the other evidence in the case, in determining what was the real or true value—"market value just before and after the taking of the land in question"—at the date of the first occupation by the government. This is the real inquiry, and this is finally the question in each case which must be determined; and the questions of growing crops on the lands at the time of said occupation, and their value as of that time, are all incidents which must be inquired into and determined under the instructions given you by the court and in the light of your common sense, common knowledge, and everyday experience as men.

[7] The government is not entitled to any credit because of any increased valuation of other lands of the owner, if there be any such other lands, on account of the proposed improvements or uses by the United States, or because of the location of a military camp, or other improvements actually made or in contemplation of being made on the occupied lands; nor are the owners entitled to receive any increased valuation because of such uses of the lands or improvements actually made or in contemplation of being made by the government.[7]

Your assessment in each case should be the value of the lands at the time of taking, having regard to the existing business wants of the community, or such as may reasonably be expected in the near or immediate future.[8]

[8] The rule of law is that the value at which the owner has assessed the lands for taxation is admissible as a part of the evidence in the case tending to contradict the testimony of the owner, who may have placed a greater valuation on the same lands in his testimony before you, and also as independent evidence, to be given such weight and worth by you as it may be entitled to, in your enlightened judgment, of the value of the lands. It is hardly necessary to say in this connection that such evidence is not conclusive, but is to be considered by you, together with all the other evidence in the case, in arriving at the true value of the property taken.

When you shall have heard all the evidence in each case, you must carefully go over and inspect the several tracts of land, if you have not already done so, involved in these condemnation proceedings, and exercise your own best judgment in the light of all the facts and circumstances of the case; and then it will be your duty, after having weighed and considered it all carefully, to make a just and true finding or award in each case.

[7] M. Nav. Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Kerr v. Park Com'rs, 117 U. S. 379, 6 Sup. Ct. 801, 29 L. Ed. 924.

[8] C., B. & Q. R. R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; Boom v. Patterson, 98 U. S. 403, 25 L. Ed. 206.